[Crim. No. 44.   Second Appellate District.—February 18, 1907.]

## THE PEOPLE, Respondent, v. STEVEN HARBEN, Appellant.

CRIMINAL LAW—PASSING FICTITIOUS BILL OF NONEXISTENT BANK—SUFFICIENCY OF INFORMATION.—An information which charges the defendant with passing a fictitious bill of a bank not in existence with intent to cheat and defraud the complaining witness, and with knowledge of the false and fictitious character of the bill and of the nonexistence of the bank named in the bill at the time he passed the bill, sufficiently sets forth every essential element of the offense for which punishment is provided in section 476 of the Penal Code.

ID.—SUFFICIENCY OF EVIDENCE—IMMATERIAL FACTS—ORIGINAL GENUINENESS—INCOMPLETENESS.—Evidence showing that the bill as passed by defendant was double, and that the two bills as pasted together were in effect a simulation of a current bank note, and were evidently prepared with the purpose of concealing their real character, and as passed were not "genuine," but were "false" bills of a nonexistent bank, and were intended to defraud and deceive the complaining witness, and had that effect, is sufficient to warrant the jury in convicting the defendant. In view of such evidence, it is not material whether the bills may have been originally genuine when they left the bank, nor whether they were originally incomplete and illegally issued.

ID.—EVIDENCE—SIMILAR CRIMES—KNOWLEDGE OF CHARACTER OF BILL—FRAUDULENT INTENTION—SYSTEMATIC SCHEME.—Evidence of similar crimes to show knowledge of the character of the bill alleged to have been fraudulently uttered must be confined to prior passage of other fraudulent bills; but on the question of fraudulent intention, and to show a systematic scheme to defraud, similar offenses subsequent to the utterance of the bill in question may be proved.

ID.—REMOTENESS OF EVIDENCE—DOCTRINE OF PROBABILITIES—QUESTION FOR COURT.—Conceding that the evidence of similar offenses is based upon the doctrine of chances or probabilities, their remoteness in time and similarity of the instrument become matters affecting the weight rather than the admissibility of the evidence. If the evidence has any application under the rule, whether or not it has sufficient weight to entitle it to be submitted to the jury is a question for the determination of the trial court.

ID.—QUESTION OF ALIBI—PROOF OF SUBSEQUENT OFFENSE—IDENTITY.—If the evidence of another offense tends to establish an intent to defraud, and is admissible for that purpose, it will not be rejected merely because it may also tend to prove the identity of the per-

son who committed the crime being tried; this rule is not affected by the fact that the defense is an alibi.

ID.—CONSTRUCTION OF PENAL CODE—AMENDMENT.—The amendment of section 470 of the Penal Code in 1895 did not affect section 476 thereof, under which the defendant was prosecuted.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

E. L. Hutchinson, Henry H. Roser, and H. H. Appel, for Appellant.

U. S. Webb, Attorney General, and E. E. Selph, Deputy Attorney General, for Respondent.

TAGGART, J.—This is an appeal from a judgment of conviction, and from an order denying defendant's motion for a new trial, upon a charge of passing a fictitious bank bill in violation of the provisions of section 476 of the Penal Code.

The information charges that the defendant on the twenty-eighth day of October, 1905, passed a certain fictitious bank note of a bank or corporation having no existence at that time; and charges the defendant with knowledge of the false and fictitious character of the bill, and of the nonexistence of the bank named in the bill at the time of the passing of the bill.

The note or bill is double, that is, it consists of two bills pasted together, the exposed sides being similar to each other and the reverse side of each bill being entirely concealed from view. Both bills are of the denomination of twenty dollars and purport to have been issued by the State Bank at New Brunswick, state of New Jersey. One of the exposed faces bears the "No. 31777" and the date 1864; the other shows the number blank (No. ———) and the date (18——) incomplete. Both are signed "John B. Hin, Prest.," but the space preceding the word "Cash'r" is blank (——— Cash'r).

The bank named in the bill closed its doors, or as one witness put it, "busted about 1864 or 1865." It has had no existence either as a bank of issue, or otherwise, since 1865.

The bills constituting the "bill" are worthless and have had no value since the date last mentioned, except a nominal one given them by curio dealers. The absence of the name of the cashier indicates that they were never regularly issued and never became current bank notes or possessed any value as such.

These two bills, so made into one, were on the twenty-eighth day of October, 1905, tendered by defendant to the complaining witness, as $20 in lawful money, in payment of the sum of $3, being in part payment for rent of a room in the lodging-house kept by such witness at Long Beach. She accepted the bill as such payment and returned to defendant $17 in good money in change. Defendant immediately left and said witness did not see him again until ten days later, when he was under arrest in San Pedro.

In addition to defendant's said conduct tending to show his knowledge of the character of the bill in question, the prosecution introduced in evidence two other bank notes or bills of the denomination of $10 each (made into one in similar manner), purporting to have been issued by the Merchants' & Planters' Bank of the state of Georgia at Savannah; also testimony to show the passing of these bills by defendant, as a $10 bank note, in payment for a loaf of bread worth ten cents, at San Pedro, on the third day of November, 1905, and that the bank named in these bills passed out of existence about the time of the close of the Civil War. The testimony shows that in connection with the latter bills defendant received in return as change the sum of nine dollars and ninety cents lawful money.

The ruling of the trial court in admitting the latter bills to show guilty knowledge and intent is assigned as error.

The record discloses no attack upon the information, either by demurrer or motion in arrest of judgment.

The appeal presents three matters for consideration: Does the information state a public offense? Is the evidence introduced sufficient to sustain a verdict of guilty? And, Did the court err in admitting in evidence the bills passed by defendant in San Pedro, and the testimony in connection therewith introduced to show that he did pass them and to show the character of the bills?

Every essential element of the offense for which punishment is provided by section 476 of the Penal Code is set forth in

the information. It charges the defendant with passing a fictitious bill in writing, of a bank not in existence, with the intent to cheat and defraud the complaining witness, and alleges that the defendant had knowledge of the character of the bill and of the nonexistence of the bank named in the bill at the time he passed the latter. This is sufficient.

Defendant contends that there is no evidence to show that the bills are "fictitious," but that, on the contrary, all the evidence in this respect tends to show that they were "genuine" in so far as they were complete, and that the bank was in existence at the time they bear date. Again, it is urged, that the bill or bills not having been properly executed, and this appearing upon the face or faces thereof, it, or they, could not be the means of committing a fraud.

Webster defines "fictitious" as "feigned, imaginary, not real, counterfeit, false, not genuine." If it were the duty of the court to divorce these bills from the circumstances under which they were passed by defendant, separate them from each other and restore them to the condition in which they probably were when they left the bank whose name they bear, it might find them to have been genuine at that time, but as prepared by defendant, or someone else, with the evident purpose of concealing their real character, and as passed, they were "not genuine," but were "false," and instruments of fraud and deceit, and the jury were justified by the evidence in so finding.

It is not material to the question that the bills were not complete and legally issued. As appears from language quoted by the supreme court with approval in *People* v. *Munroe,* 100 Cal. 667, [38 Am. St. Rep. 323, 35 Pac. 326], "It is a matter of perfect indifference whether it possesses or not, the legal requisites of a bill of exchange, or an order for the payment of money or the delivery of property. The question is whether upon its face it will have the effect to defraud those who may act upon it as genuine, or the person in whose name it is forged. It is not essential that the person in whose name it purports to be made should have the legal capacity to make it, nor that the person to whom it is directed should be bound to act upon it, if genuine, or have a remedy over."

The language here used was in relation to forged paper which might injure either the person imposed upon by its

passage or the person whose name was forged.  By the passing or utterance of a bank note of a nonexistent bank no one would be injured except the person receiving it as a thing of value and those to whom he might deliver it in the same manner.  No question of the liability of the person whose signature is attached can arise.  It becomes unimportant to know who signed it or whether or not it was signed at all. As pasted together the two bills were in effect a simulation of a current bank note and intended to deceive.  They accomplished this purpose with the complaining witness.  Being false, fictitious and "not genuine," the only test of whether or not the passage of this "bill" was a crime was the intent to defraud on the part of the defendant.

The practice of permitting the introduction of evidence to prove other or similar offenses to show knowledge, intent, design or system in cases of conspiracy, counterfeiting and forgery, false pretenses or representations, receiving stolen goods, embezzlement, etc., has long been recognized by the criminal courts.  (Roscoe's Criminal Evidence, 6th ed., p. 88; Wharton's Criminal Evidence, 8th ed., sec. 39 et seq.; *People* v. *Gray,* 66 Cal. 275, [5 Pac. 240], and cases cited.)

Some confusion exists in the cases as to the principle upon which such evidence has been admitted.  A recent treatise on evidence (Wigmore on Evidence), by a classification of the cases on the basis of the purposes which the evidence is intended to serve, has dispelled some of the fog which envelops the declarations of the courts on the subject.

A distinction holding that facts admitted to show knowledge should contain an element of notice or warning, while those to establish intent need only to negative inadvertence or other innocent explanation of the act, appears at first sight purely academic; but in the consideration of apparently conflicting opinions, by ascertaining the view point of the court expressing the opinion, it greatly aids in reducing the apparent inharmony among the cases.

The knowledge to be considered here is that which refers to the character of the bill charged by the information to have been fraudulently uttered.  In order that the utterance of another fraudulent bill should be evidence of such knowledge on the part of the defendant it must have been uttered prior to the time of the passing of the bill in question.  The intent

5 Cal. App.—3

with which the bill was passed, as distinguished from the knowledge of the passer, however, opens a broader field. It includes the knowledge of the character of the bill and also the purpose with which the act was done. While the subsequent utterance could not establish notice at the prior date, it might, nevertheless, throw some light upon the intent and purpose which actuated the utterer at the time of the passing of the first bill.

The same distinction may also be drawn between the facts constituting design and those establishing system. A design implies a preconceived plan or preparation, while system may be established by any facts showing a general intent coupled with similarity of method or arrangement. While a preconceived plan could not well be inferred from subsequent events, a general system might be deduced from a line of conduct preceding or following the principal event.

A system being established, it would matter little whether the act complained of was the first or last individual manifestation of the general plan that could be shown. It cannot be denied that a repetition of utterances of false and fictitious notes tends to negative innocence in particular cases. Mr. Wigmore says the principle applicable to such evidence proceeds upon the doctrine of chances. As to remoteness of time of the utterances sought to be introduced and the similarity of the notes or bills uttered on the several occasions, the rulings exhibit views of all degrees of liberality and narrowness. (Wigmore on Evidence, sec. 310.)

Conceding that the principle upon which this evidence is introduced is the doctrine of chances or probabilities, the number of the utterances, their remoteness in time and the similarity of the instruments become matters affecting the weight rather than the admissibility of the evidence. In such cases, if the evidence has any application under the rule, whether or not it has sufficient weight to entitle it to be submitted to the jury is a question for the determination of the trial court. (*People* v. *Frank,* 28 Cal. 507, 518.) The sameness of the peculiar, if not unique, method of preparation of the two sets of bills, and the similarity of the manner of realizing upon them, warranted the court in permitting the jury to determine from the two transactions whether or not the defendant was operating by a system of imposition and fraud,

and to draw therefrom such inference of intent and knowledge as the facts justified.

In the consideration of the case the fact that the record discloses that defendant sought to establish an alibi as to the principal offense, and to prove that he was not in Long Beach on the 28th of October, 1905, while he admitted being in San Pedro on the third day of November, has not been overlooked. Under such circumstances there is no doubt that the admission of the evidence as to the San Pedro transaction tended to establish the identity of the defendant as the man who passed the fictitious bill in Long Beach. Conceding, but not deciding, that it was not admissible for that purpose, it was relevant to the issue of fraudulent intent, and this was sufficient to entitle the evidence to be admitted.

The rules relating to the admission of such evidence were carefully complied with: Ground was first laid implicating the defendant in the case under trial; the defendant was shown to have committed the extraneous crime; the similarity of the offenses was apparent from the evidence; and, the jury were properly instructed by the court as to the purpose of the introduction of the evidence. There was no error in the introduction in evidence of ''Exhibit B,'' nor in permitting the prosecution to introduce the testimony given in connection therewith.

Defendant's motion for a new trial, as displayed in the transcript, also relies upon the ground that the court erred in instructing the jury. No particulars are specified in the transcript and none presented in the brief. An examination of the instructions in the record fails to disclose any error in this respect.

The amendment of section 470 of the Penal Code in 1905 did not affect section 476, and section 470 has no application here. That amendment applies only to the ''signing of the name of a fictitious person'' with the intent to defraud, while the crime here charged is the passing of a fictitious bank note of a bank having no existence.

The judgment and order of the trial court are affirmed.

Allen, P. J., and Shaw, J., concurred.