[Crim. No. 1005.   Third Appellate District.—April 19, 1928.]

THE PEOPLE, Respondent, v. PRIVATO POZZI, Appellant.

Lewis D. Mooney and A. L. Wessels for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.— The defendant, by information filed in the superior court in and for the county of Mendocino, was charged in three different counts with maintaining a common nuisance on three different designated occasions, in that, as the information charges, he wilfully and unlawfully did, on the first day of April, 1927 (first count), on the third day of May, 1927 (second count), and on the twenty-first

day of May, 1927 (third count), maintain "a place, in the city of Fort Bragg, Mendocino county, state of California, where intoxicating liquor, to-wit: whiskey and jackass brandy, was kept, sold and bartered, which said whiskey and jackass brandy was then and there fit for beverage purposes, in violation of title 2 of the 'Volstead Act'" [27 U. S. C. A., sec. 4, etc.], contrary, etc. The information is based on section 21 of title 2 of said act, which provides that "any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both," etc.

The information, as a whole, was demurred to generally, and also upon the ground that it "does not conform to the requirements of sections 950, 951 and 952 of the Penal Code," and on a number of other special grounds, to wit: uncertainty, ambiguity and indefiniteness in certain specified particulars. Each count of the information was separately demurred to on like grounds.

The demurrer was overruled. The jury, by whom the questions of fact were tried, found the accused guilty on each count of the information. The defendant made a motion in arrest of judgment and also moved for a new trial. Both motions were disallowed, and the court pronounced judgment upon the accused as follows: Upon the first count, a fine of $1,000, with the alternative, upon default in the payment of said fine, or any part thereof, of imprisonment in the county jail one day for each two dollars of the fine not paid, not exceeding one year; upon the second count a fine of $500, or upon default in the payment of said fine, the like imprisonment to the one preceding, and upon the third count, "imprisonment in the county jail for the term of six months," said "sentences to run consecutively."

The defendant appeals from the judgment and the order denying him a new trial.

The grounds urged for a reversal, generally stated, are: 1. That the information, without authority of law, charges three separate and distinct offenses not relating to the "same

act, transaction or event but each relating to separate and distinct act, transaction or event''; 2. That the court erred to the prejudice of the substantial rights of the accused in certain of its rulings upon the evidence; 3. That there is not in the evidence sufficient support to the verdict; 4. That error was committed by the trial court in its refusal to allow and submit to the jury certain instructions proposed by the accused.

1. The demurrer was properly overruled. The information states the offense charged in each count "in ordinary and concise language,'' and "in such manner as to enable a person of common understanding to know what was intended.'' (Pen. Code, secs. 950, 951, and 952.)

█ The joinder of the three separate offenses in the information under as many different counts was legally proper. (Pen. Code, sec. 954.) Said section authorizes the charging in an indictment, information or a complaint of "two or more different offenses connected together in their commission, or different statements of the same offense, or *two or more different offenses of the same class of crimes or offenses, under separate counts.''* The offenses charged in the information here under the three separate counts are "of the same class of crimes or offenses.'' In fact, as is obvious, the three counts charge precisely the same offense, committed, however, at different times. The cases cited by counsel for defendant in support of his position that the joinder in an indictment or information under separate counts of two or more different offenses not relating to the "same act, transaction or event'' is not authorized by law and, therefore, involves prejudicial error, were decided before section 954 was amended so as to permit the joinder in the accusatory pleading of "two or more different offenses of the same class of crimes or offenses.'' Hence, those cases have no application.

█ But it is further contended that the alleged offenses charged in the information constituted but one offense; that, in other words, the crime of maintaining a common nuisance cannot be segregated into two or more offenses and so charged under different counts in an indictment or information as the commission of separate and independent offenses, where, as here, the several acts constituting the alleged nuisance have been committed between intervals

of time of several days or two or three weeks only from each other, but that a single charge only may be alleged, all the acts committed on the three several occasions being merely evidentiary or proof of the commission of the single offense. We are not impressed with this contention. It will be noted that the language of section 21, title 2, of the Volstead Act, under which the defendant in this case was proceeded against, is that any house, place or any of the other structures therein mentioned, ''where intoxicating liquor is manufactured, sold, kept, or bartered, in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor.'' It is clear that under that provision where any one of several things or acts is done at such building, structure, etc., the place where such act is done or committed, *ipso facto* and instantly becomes a common nuisance, and any person, not exempt by express provision of the statute from the penalties thereof, who maintains such nuisance is guilty of a misdemeanor. If, in other words, intoxicating liquor is manufactured at any such place; or if such liquor is sold or bartered at any such place; or if it be kept at any place, then in either case the place at which such act is committed is by the statute itself stamped as a common nuisance, and the party so maintaining such nuisance is guilty of a misdemeanor. If a person on one certain day of each month were to engage in manufacturing intoxicating liquor, no one would say that every such time he had so manufactured such liquor for two, three or four months, would not constitute as many different and distinct offenses of maintaining the common nuisance defined by the federal act. As to the crime of maintaining a common nuisance for the selling of such liquor, let it be supposed that a person owned or had legal possession of a place located near a park where public festivals or other outdoor amusements were held once every week—on every Sunday, for instance—and that at such place he engaged in selling intoxicating liquor on each of such days only, would it be reasonable to say that he would not, under the federal statute, be guilty of maintaining a common nuisance on each and every one of such days? We can conceive of no reasonable ground for a negative answer to the question thus pro-

pounded. But as has been shown, the Volstead Act unqualifiedly declares that any place where intoxicating liquor is sold is a common nuisance and that any person who maintains that nuisance—that is, who sells such liquor at such place—is guilty of a misdemeanor. The act does not prescribe a specific period or length of time of the unlawful possession of intoxicating liquor or during which it shall be sold shall be necessary to constitute a nuisance. It has been said that "the offense may be committed in one day as well as in two or more." (McFadden on Prohibition, sec. 428, p. 389; *Feign* v. *United States,* [9th Cir.], 279 Fed. 107.) Of course, the evidence, direct and circumstantial, must be such as to show that such liquor was unlawfully sold, kept or bartered on the premises on the particular day in question. It must be shown that surrounding the case are special circumstances which might themselves be sufficient to establish the habitual character of the offense, or the intent or purpose with which the liquor was kept by the accused. (*Marshallo* v. *United States,* [2d Cir.] 298 Fed 74.)

██ Manifestly, it cannot be held, as a matter of law, that the fact of the sale of liquor on each particular day of several, in the absence of proof of other sales in the interval of time elapsing between the several sales charged under the different counts, warrants the conclusion or an inference that the accused did not discontinue the unlawful business during such intervals of time. The fact of the sales made on each of the days in question might afford an inference that the sales were continuous—that is, in this case, that they were more or less made every day from and including the first day of April to and including the twenty-first day of May, but, in the absence of proof to that effect, it cannot from the mere proof of sales on the several days named in the information, be so inferred as a matter of law.

██ Counsel for the defendant appear to assume that section 373a of the Penal Code has application here. That section provides: "Every person who maintains, permits, or allows a public nuisance to exist upon his or her property or premises, and every person occupying or leasing the property or premises of another who maintains, permits or allows a public nuisance to exist thereon, *after reasonable notice in writing from a health-officer or district attorney to remove, discontinue or abate the same has been served upon such*

*person*, is guilty of a misdemeanor, and shall be punished accordingly.''

The first answer to the proposition is that the prosecution of the accused in this case is under the Volstead Act, which contains no provision, as does the code section, requiring notice to be given to the offending party to discontinue the nuisance. Secondly, it is to our minds obvious that the provision of said section requiring such notice to be given to a party guilty of maintaining a public or common nuisance has no application whatever to a case of the character of the one at bar. It is readily perceivable how such a provision may properly apply to a case where a legitimate business may, by the manner in which it is conducted and maintained, become a menace to the health and comfort of a considerable portion of the public, and so become under the law a public or common nuisance. Such nuisances may be abated by recourse to appropriate civil remedies afforded by the law, and the legislature may, as it has done, for good and sufficient reasons, denounce the act of maintaining such nuisance as a public offense, and provide, as in effect it has, that if, after notice by the authorities to discontinue the same, the person maintaining such nuisance fails or omits to discontinue it or remove the cause thereof, will be prosecuted and punished for such dereliction. His omission to abate the nuisance is in reality wherein he offends the law. But it is inconceivable that such a notice should be required to be given a party maintaining a nuisance *per se,* or which is of and in itself criminal. Every element of the offense of maintaining a common nuisance under the federal statute upon which this prosecution is founded involves a criminal act. The keeping by a person of intoxicating liquor at any of the places mentioned in the statute is itself an act which subjects him to the penalties of a misdemeanor, as likewise does the sale thereof. The possession of intoxicating liquor and the sale thereof by one not included within the excepted class are separate and distinct offenses, and a person keeping and selling the same may be prosecuted for either separately, yet both offenses are essentially elements or ingredients of the crime of maintaining a common nuisance under the Volstead Act. It would indeed be an unique anomaly in the administration of criminal law to require notice to be given to an habitual transgressor of public law to cease his criminal

activities before he could be proceeded against in a criminal action to punish him for his offenses against society.

2. It is contended that error was committed by the trial court in permitting evidence of sales of intoxicating liquor at the place named in the information subsequent to the several occasions upon which the accusatory pleading alleges that the several offenses charged were committed.

It is a well-settled general rule that evidence of the commission of a certain crime by the defendant other than the crime for which he is on trial is inadmissible. There are, however, exceptions to that rule, and we think the case here comes within such exceptions. These exceptions rest on various reasons, dependent upon or according to the nature of the case and the circumstances attending or surrounding the act of committing the crime charged. Apt and illuminating illustrations of the application of the exception under different circumstances are to be found in the following cases: *People* v. *Craig,* 111 Cal. 460 [44 Pac. 186]; *People* v. *Koller,* 142 Cal. 621 [76 Pac. 500]; *People* v. *Harben,* 5 Cal. App. 29 [91 Pac. 398]; *People* v. *Zimmerman,* 11 Cal. App. 115 [104 Pac. 590]; *People* v. *Weir,* 30 Cal. App. 766 [159 Pac. 442]; *People* v. *Ferdinand,* 194 Cal. 555, 563 [229 Pac. 341]. The general theory upon which evidence of the commission of other crimes cognate in nature to the one for which the accused is on trial is received is that the legal relation of the two crimes is such that the proof of the commission of the "other crime" tends directly to show the intent or the purpose or the motive with which the crime for which the defendant is on trial was committed. So, in the present case, the theory of the legal propriety of permitting evidence of similar crimes to those charged in the information committed by the accused prior and subsequent to the commission of those charged is (the unlawful possession of the liquor by the defendant having been shown) that the commission of such prior or subsequent acts tends to show that the defendant had conceived and contrived a system for the illicit traffic in prohibited alcoholic liquors and hence to show the wrongful intent with which or the like purpose for the accomplishment of which he kept or possessed intoxicating liquor at the place where it is charged that he was selling the same to such of the public as might desire thus to be accommodated.

The claim that the allowance of proof of the sale by the defendant of intoxicating liquor in the months of January and February, 1927 (three and two months prior to the first day of April, 1927, on which day it is alleged, as seen, that the defendant committed the first of the offenses charged in the information), is too remote from the date of the alleged commission of said first offense or the other offenses to be relevant or material or competent cannot be sustained. That evidence was admissible on the same theory as that upon which evidence of subsequent sales was receivable. The question of the remoteness, in point of time, of the several occasions from each other is one of weight, which it was for the jury to determine.

What has been said above answers the proposition advanced by defendant that evidence of sales charged under one particular count of the information would naturally but wrongfully be considered by the jury in passing upon and determining whether the charges in the other counts were sufficiently proved. The jury would have the right to consider the fact of sales on each of the dates on which the several offenses are respectively charged to have been committed as evidence of the intent or purpose with which the liquor was kept by the accused on each of such dates. In other words, and by way of illustration, evidence of sales of liquor on the 1st of April would be proper to be considered by the jury in determining the intent or purpose of the accused in having possession of intoxicating liquor at the place named on the 3d and 21st of May. The rule is well stated in *People* v. *King*, 23 Cal. App. 259, 262 [137 Pac. 1076], as follows: "Such evidence is admissible as an exception to the general rule upon the theory that if it be shown that a defendant has been repeatedly guilty of similar offenses, it may be reasonably and logically inferred that the act charged against him in the information was accomplished with a felonious intent," citing Underhill on Criminal Evidence, second edition, sections 87, 89, and certain California, as well as cases from other jurisdictions.

3. The evidence sufficiently supports the verdict as to the three counts of the information. Briefly summarizing the evidence addressed to the proof of the offense charged in each count of the information is all that is conceived to be necessary. First, it should be stated that the defendant

owned and conducted the Pacific Hotel at the town of Fort Bragg, in Mendocino County. This was the place at which the alleged offenses were committed. One Louis P. Remcgie, who was the manager of a private detective agency in San Francisco, was employed by the district attorney of Mendocino County early in the year 1927 to investigate supposed "bootlegging" activities in Fort Bragg. He testified he first met defendant at his hotel in February, 1927; that he then represented to defendant that he was a drummer, and as such was selling "pants presses." He testified (count one): Was at defendant's hotel on April 1, 1927, about 7 P. M., accompanied by a man named Northern; the latter took witness into a back room, which was the kitchen; they purchased two drinks of whisky, for each of which they paid 25 cents, or 50 cents for the two; they also purchased one pint of liquor and paid $2.50 therefor; defendant served the liquor to witness and Northern and received the money; they bought and paid defendant for four drinks that day; at the time spoken of there were several other men in the kitchen; some of these men then present appeared to be under the influence of liquor; witness took with him the pint bottle of whisky sold to him by defendant. Witness Northern: Worked in the mill of the Caspar Lumber Company, in Mendocino County near Fort Bragg; worked for that company from the first day of February until the 16th of April, 1927; during that time went to Fort Bragg "twice or three times a week"; always saw defendant, usually at the Pacific Hotel in Fort Bragg; during that period of time he purchased from defendant at the Pacific Hotel about eight drinks of intoxicating liquor; made those purchases at different times from the first of February to the 16th of April, 1927; paid defendant for those drinks 25 cents a drink, the defendant always personally serving the drinks to witness; saw other persons during the time mentioned buy drinks from defendant 15 or 20 times; had seen on several different occasions during the period of time above stated persons under the influence of liquor at defendant's place; witness stated that during the period of time referred to by him he was in the employ of the sheriff of Mendocino County, being paid by the sheriff for his services $100 per month. Cross-examination: Purchased for the first time a drink of whisky from defendant on the 1st of February; saw

intoxicated persons at the hotel "twice or three times," one of those times being the 1st of April; one man witness knew was intoxicated on said date; knew it from the way the man walked, talked, and acted; the man talked loud; saw him obtain from defendant three drinks there on the 1st of April; the time of day witness was in the kitchen of the Pacific Hotel on April 1st was about 7:45 P. M. Witness Young, detective, employed by the district attorney of Mendocino County to investigate conditions as to traffic in intoxicating liquor in Fort Bragg, was in said place in January, 1927, and on the afternoon of the twenty-seventh day of said month bought from defendant "in a room behind the kitchen in the Pacific Hotel" about eight drinks of whisky and a bottle of whisky "which I took away with me"; witness on that day paid the defendant the money for the drinks which were personally served and delivered to witness by defendant in said room of the hotel, the latter accepting and receiving from witness the money therefor; on the evening of January 31, 1927, witness purchased two drinks from defendant at the same place, the latter personally serving the liquor and receiving the money therefor from witness; witness was first taken to the Pacific Hotel by one Curley Flaherty, who introduced witness to defendant; on the second visit of witness to the hotel (January 31), he was accompanied by one Jim Brown, a deputy sheriff. Second count: Remegie, the detective, testified that on the third day of May, 1927, about 4 P. M., he and one George Saleskie, one of his "operators," or another detective in his employ, went to the Pacific Hotel and in the "back room" above mentioned, he purchased seven drinks and a pint bottle of moonshine whisky from defendant, and paid the latter 25 cents each for the drinks and $2.50 for the pint bottle; that there were several other persons whose names the witness did not know and also defendant's two brothers in the room at the time; that some of the "other men" appeared to be under the influence of intoxicating liquor. Said Saleskie testified that he was with Remegie at the Pacific Hotel on the 3d of May and that he was there also on the 4th of May; it was about 4:30 P. M. that he and Remegie were at said hotel on the 3d of May; he, Remegie and the defendant at that time "shook dice" for the drinks; they played ten games, Remegie lost four, witness

162

three and defendant three, they were then "taken to the back" or the "kitchen"; they "had ten drinks coming, witness paid defendant for three drinks of. 'moonshine whiskey' " and Remegie for four, "and we took the balance out in cigars"; "around 11:55 of the same evening (3rd of May) Mr. Remegie purchased six glasses, one round of drinks, and a pint bottle"; Remegie paid the money for the six drinks and the pint bottle to the defendant; all this occurred in the kitchen of the Pacific Hotel. Cross-examination: A man named Cavanaugh suggested playing the dice game for drinks; defendant's two brothers were present, but they did not participate in the game. Cavanaugh was the man who appeared to be intoxicated. Count three: Remegie testified: On the evening of May 21, 1927, he, with Sheriff Byrnes of Mendocino County, a deputy sheriff and the district attorney, Gibson, drove to Fort Bragg and parked their car near the Pacific Hotel; this was about 8:40 P. M. of the 21st; the officers then searched Remegie to be able to say that he then had no liquor on his person; no liquor was then found on his person; Sheriff Byrnes thereupon marked a five-dollar bill in a way that it could be identified and delivered it to the witness who, with the bill in his possession, immediately thereafter went to the defendant's hotel; on entering the hotel Remegie first saw defendant's two brothers; he asked them where defendant was, and one or the other replied: "He is back behind"; witness conversed for a moment with the brothers, when defendant "came out, and went behind the bar and placed some money in the cash register." Continuing, Remegie testified: "I then shook hands with him (defendant) and went in the back of the kitchen where I purchased four drinks of whiskey at 25 cents a drink, and also purchased one pint of whiskey for two dollars and a half from Privato Pozzi (defendant) with this marked five dollar bill"; witness then left the premises and returned to where the car in which he and the officers mentioned rode to Fort Bragg and "handed the bottle over to Mr. Gibson" (district attorney); Sheriff Byrnes and his deputy, McDaniels examined the bottle; about an hour later, witness, with Sheriff Byrnes and District Attorney Gibson, returned to the Pacific Hotel, "raided" the place, and among other articles found the marked five-dollar bill in defendant's cash register; they searched all the rooms of the hotel—in fact, they searched

the premises inside and out; the search was first begun by Deputy Sheriff McDaniels and another deputy, known as "Frenchie" Brochner; witness did not know what, if anything, in the way of incriminatory evidence was found at that time; later a more thorough search was made by the sheriff, district attorney, and witness; they found no liquor about the premises; they found a five-gallon vinegar keg, it had a strong odor of whisky, a witness was certain that it "smelled of moonshine whiskey." C. H. McDaniels, deputy sheriff, assisted in the search; he corroborated Remegie as to parking near the hotel, the search of Remegie's person as told by the latter, and that no liquor was found on the person of Remegie; was instructed before proceeding with the search of defendant's place to guard the cash register; found in the cash register the marked five-dollar bill spoken of above; saw and smelled the "five or ten-gallon" keg mentioned by Remegie; it "smelled of whiskey"; also found a "funnel and syphon, which both smelled of moonshine whiskey, and there was a trough to the side of the dining-room in the rear of the place with quite a number of pint bottles there which recently had been washed out, and one bottle contained a half teaspoonful of moonshine whiskey; there was also one case of empty pints there; probably those cases hold about twenty-four dozen; it was a large case . . . ; they were regular pint flasks like these," referring to some bottles taken from defendant's place on the night of the search and introduced in evidence; five glasses were found on and taken from a table in the kitchen, which "smelled of" whisky; a bottle was found in the trough "to the side of the dining room." Sheriff Byrnes corroborated the testimony of McDaniels in all vital respects as to the circumstances of the search of defendant's premises on the evening of the 21st of May, 1927, and the results of such search; and also as to the marking of the five-dollar bill from which the payment for a bottle of liquor was made and the finding of said bill in the cash register of the defendant at the time the search was in progress. The details of the sheriff's testimony need not be recited herein. It should be stated, though, that the sheriff further testified that on either the 20th or the 21st of September, 1927, he stepped into the defendant's hotel and into the kitchen and there saw several men playing dice at a table, on which also, at

the same time, there were standing several whisky glasses and a pint bottle "partly full of whiskey"; the glasses had just been used, as they "smelled of" whisky; the defendant and his two brothers and three other men were standing by the table. This was near the hour of 7 A. M. The defendant himself did not testify at the trial, nor did he introduce any testimony in his defense. His brother, Palmiro Pozzi, was called to the stand by the people and testified that the defendant was the owner of and conducted the hotel at all the times mentioned herein. No one can reasonably doubt from a perusal of the testimony as above given that each offense stated in the information is amply supported.

4. The complaint that the court erred in refusing to submit to the jury certain instructions proposed by the defendant is not well founded. The principles declared in the instructions so proposed and by the court rejected, where pertinent to the case, were clearly set forth in the court's charge. The principal criticism in this particular is that the court failed to instruct the jury that the purpose for which testimony of sales of liquor by defendant prior and subsequent to the 1st of April, the 3d of May, and the twenty-first day of May, 1927, was not to prove other different and distinct offenses from those charged in the information, but merely to show the purpose for which defendant kept intoxicating liquor in his possession and the character of the place; that refusal by the court to adopt into its charge an instruction proposed by defendant covering that proposition emphasized the prejudice resulting to the rights of the accused by the court's omission and refusal thus to instruct the jury. We are somewhat at a loss to understand why such complaint is made, since within the charge delivered by the court to the jury is embraced a clear statement of the rule referred to. Indeed, upon all the principles pertinent to the case as made the instructions given to the jury were full, clear, and correct, and afforded sufficient enlightenment upon the law of the case to enable the jury to perform their important duties intelligently and justly. The case was fairly tried and the verdict as to each count of the information appears to be just.

The judgment and the order are affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 18, 1928.

Preston, J., dissented.