# IN THE COURT OF APPEALS 10/15/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-KA-00423 COA

JAMES E. MEWBOURN A/K/A JAMES EVAN MEWBOURN

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. MARCUS D. GORDON

COURT FROM WHICH APPEALED: NEWTON COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:

JOSEPH A. KIERONSKI JR.

WILLIAM B. JACOB

DANIEL P. SELF JR.

ATTORNEYS FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: CHARLES W. MARIS, JR.

DISTRICT ATTORNEY: KEN TURNER

NATURE OF THE CASE: CRIMINAL

TRIAL COURT DISPOSITION: CTS 3 - 16: POSSESSION OF FIREARMS BY

CONVICTEDFELON: CTS 3 - 6: EACH 3 YRS & PAY $5,000.00 FINE; CTS 7 - 10: PAY $5,000.00 FINE: CTS 3 - 10 RUN CONSECUTIVELY; CTS 11 - 16: PAY $5,000.00 FINE; CTS 11 - 16 RUN CONCURRENTLY; PAY COURT COSTS

BEFORE THOMAS, P.J., COLEMAN, AND McMILLIN, JJ.

THOMAS, P.J., FOR THE COURT:

SUMMARY

James E. Mewbourn was indicted in a sixteen count indictment with felony possession of marijuana, possession of hydrocodone, and possession of fourteen firearms as a convicted felon. The State dismissed the hydrocodone charge and proceeded to trial on the marijuana and firearm charges. The jury found Mewbourn not guilty on the marijuana charge but guilty on each of the fourteen firearm charges. The trial court imposed a total sentence of twelve years to serve and fines totaling $40,000.00. Mewbourn appeals, alleging that the verdict was against the overwhelming weight of the evidence, that erroneous instructions were granted, and that the trial court erroneously stacked sentences. Finding no error, we affirm.

FACTS

On November 18, 1993, operating pursuant to a warrant, officers with various law enforcement agencies entered and searched Mewbourn's Newton County property. In the main house located thereon, they found a loaded handgun hidden in a grandfather clock, and in Mewbourn's bedroom, they found a box of 30.06 cartridges. In an unlocked gun cabinet inside a mobile home located out back, they found thirteen other guns of various types. Records showed that Mewbourn had purchased that mobile home, and that it was titled in his name. Bridget Pilgrim, Mewbourn's paramour, attempted to come to his aid, testifying that she lived in the mobile home and that she was in the process of buying it from Mewbourn. However, no canceled checks or other such corroboration ever surfaced at trial. Pilgrim further testified that all of the guns in question belonged to her. She explained that Mewbourn had given the guns to her after his felony conviction in Alabama. She also sought to provide a cover for the gun found in the grandfather clock, testifying that she had put it there without Mewbourn's knowledge.

Mewbourn would later elaborate on the reason for his gift of the guns to Pilgrim:

> I gave them to Mrs. Pilgrim. I said, "You can do whatever you want to with them, but they've got to come out of this house, and they can't be back here. No guns."

Where the guns went, with the exception of the one in the clock, was to Mewbourn's backyard, into his mobile home. According to Pilgrim's son, Mewbourn was aware that the guns were in the trailer.

It further developed at trial that the matter of Pilgrim's living in the mobile home was a charade put on for the benefit of Pilgrim's ex-husband, who might gain an advantage in a child custody dispute if he was aware that she was living with Mewbourn. Furthermore, without doubt, Pilgrim spent time in the main house with Mewbourn, since her clothes were found in the master bedroom closet, a fact admitted by both Mewbourn and Pilgrim's son. Officers had the Mewbourn property under surveillance for some time, and had observed that Pilgrim was living with Mewbourn in the main residence, and had heard her telephone conversations, via wiretap, at all times of the day and night, originating from the main house. Even Pilgrim's son was forced to admit that his mother occasionally spent the night at the main house with Mewbourn. Officers also knew that Mewbourn and Pilgrim shared a joint bank account. Moreover, Pilgrim admitted that she had told her cousin that she had been living with Mewbourn for six years.

Interestingly, at the time of the commencement of the search of his property, Mewbourn was at his hunting camp in Jasper County.

At trial, the State rested its case on constructive possession as no one actually saw Mewbourn in possession of the firearms. There were no fingerprints, and Mewbourn did not confess.

LAW

I.

THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

Mewbourn's issue is listed as a weight of the evidence issue but is interwoven with a sufficiency of the evidence argument. Under either scenario, Mewbourn's argument fails.

Our supreme court has held in constructive possession cases:

> There must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the [article] involved was subject to his dominion and control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

*Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971). Our supreme court has further recognized that "[a] presumption of constructive possession arises against the owner of premises upon which contraband is found." *Cunningham v. State*, 583 So. 2d 960, 962 (Miss. 1991). However, when the contraband is found on premises which are not in the defendant's exclusive possession, the State must show "some competent evidence connecting him with the contraband." *Id.*

Given this standard and understanding our well settled scope of review concerning the weight and sufficiency of the evidence, it is clear that there was sufficient evidence to support the conviction of possession of all fourteen counts of a firearm by a convicted felon. *McClain v. State*, 625 So. 2d 774,

778 (Miss. 1993); *McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987); *Wetz v. State*, 503 So. 2d 803, 812 (Miss. 1987); *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983).

II.

THE TRIAL COURT GRANTED ERRONEOUS INSTRUCTIONS TO THE JURY.

Mewbourn complains that the trial court was in error in granting instructions S-1 and D-10 relating to the firearm charges because the instructions failed to individually list the particular firearm named under each count of the indictment; rather, the instructions collectively listed the weapons as "items" or "firearms" listed in counts three through sixteen of the indictment. The indictment was not given to the jury. All fourteen firearms were in fact placed in evidence before the jury, and the verdict was in fact guilty on all fourteen counts, counts three through sixteen.

At the time the complained of instructions were being considered, Mewbourn did not object, and in fact, he specifically acquiesced in the granting of both instructions. Indeed, D-1 was an instruction submitted by Mewbourn himself.

Mewbourn has waived this issue and is procedurally barred from complaining now on appeal. *Butler v. State*, 544 So. 2d 816, 818 (Miss. 1989), *Cole v. State*, 525 So. 2d 365, 370-71 (Miss. 1987). This is so even though Mewbourn did raise this issue in his motion for new trial. *Rhodis v. State*, 349 So. 2d 1046, 1048 (Miss. 1977). We do add a word of caution. Instructions should not refer to the indictment, whether a single or multi-count indictment. The instruction should fully inform the jury of all necessary elements of law involved in the case and particularly describe property when such is part of the charge. Had there been a not guilty verdict or mistrial on one or more of the firearm counts, then the issue of these instructions would give us cause for concern.

III.

THE TRIAL COURT ERRED IN ITS SENTENCES OF JAMES E. MEWBOURN.

The trial court sentenced Mewbourn to three years to serve on counts three, four, five, and six, with the sentences to run consecutively with each other, for a total sentence of twelve years to serve. The trial court also gave Mewbourn three years on counts seven through sixteen, but ordered that they run current with each other and concurrently with counts three through six, thereby not adding any more time to the twelve years. The trial court also imposed a fine of $5,000.00 on each of the fourteen counts but further ordered that the fines be consecutive with each other in counts three through ten and concurrent as to counts seven through sixteen, the effect being a total fine of $40,000.00.

Counts three through sixteen involved fourteen distinct and separate weapons. Section 97-37-5(1) of the Mississippi Code of 1972, the statute under which Mewbourn was indicted in counts three through sixteen, provides as follows:

> (1) It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any Bowie knife, dirk knife, butcher knife, switch blade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless

> such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the U.S. Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.

Miss. Code Ann. § 97-37-5(1) (1972).

Mewbourn argues here, as he did at trial, that the possession of the firearms in this case involved one transaction and that he could only be charged with one offense or, alternatively, could only be given one sentence. Mewbourn's argument is basically that the legislature's use of the term "any" preceding the word firearm in the statute instead of the word "a" means that the legislature intended the possession act itself to be but one violation of the statute regardless of the number of firearms found at one time.

We are cited to no specific Mississippi case by either the State or defense that squarely addresses this issue under section 97-37-5(1). However, Mewbourn does cite us to federal authorities for guidance involving statutes and convictions which Mewbourn claims are analogous to our case. *See, e.g,. United States v. Berry*, 977 F.2d 915, 918 (5th Cir. 1992); *see also Ball v. United States*, 470 U.S. 856, 865 (1985). In Mewbourn's reply brief he also relies on additional authority, namely, Mississippi Code section 1-3-33 and *People v. Puppilo*, 280 P. 545 (Cal. 1929). Section 1-3-33 provides:

> Words used in the singular number only, either as a descriptive of persons or things, shall extend to and embrace the plural number; and words used in the plural number shall extend to and embrace the singular number, except where a contrary intention is manifest.

Miss. Code Ann. § 1-3-33 (1972).

*Puppilo* involved a California firearm possession statute wherein the defendant was charged with two separate counts of possession of a firearm. Both weapons were found at the same time in the defendant's home, both in a front room and in the defendant's bedroom. The defendant was found guilty on one count and not guilty on the other count. The California court held that the acquittal on one count operated as an acquittal on the second count because the possession constituted but one transaction--one possession.

The federal statutes referred to in the cases Mewbourn cites and the *Puppilo* case all involve statutes concerned with firearms in particular, and not deadly weapons in general.

While it is true that the federal statutes referred to in the cases cited by Mewbourn and the California statute in *Puppilo* support Mewbourn's argument that one may be guilty of only *one* possession regardless of the number of firearms involved, the matter is still one of statutory construction. The federal courts and other state courts may only offer guidance. We are not bound by either when the matter involves interpretation of our statutes.

Unlike the statutes involved in the cases cited by Mewbourn, section 97-37-5(1) is not just a firearms statute. It includes a number of different *deadly weapons*, i.e. firearms, various knives, attachments to firearms, and weapons capable of inflicting deadly force. It is clear to us from a plain reading of the statute that the legislature intended the possession of any one of the instrumentalities listed to constitute a separate and distinct violation of the law. It is readily apparent to us that one in possession of multiple weapons poses a greater danger than a person with only one weapon and should and can be prosecuted and punished more harshly. Therefore, we affirm.

**THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT OF:**

**CONVICTION OF POSSESSION OF FIREARMS BY A CONVICTED FELON ON COUNTS 3-6 AND SENTENCE OF THREE YEARS AND FINE OF $5,000 ON EACH COUNT TO RUN CONSECUTIVELY; CONVICTION OF POSSESSION OF FIREARMS BY A CONVICTED FELON ON COUNTS 7-10 AND FINE OF $5,000 ON EACH COUNT TO RUN CONSECUTIVELY; AND CONVICTION OF POSSESSION OF FIREARMS BY A CONVICTED FELON ON COUNTS 11-16 AND FINE OF $5,000 ON EACH COUNT TO RUN CONCURRENTLY IS AFFIRMED. APPELLANT IS ORDERED TO SERVE TWELVE (12) YEARS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A TOTAL FINE OF $40,000. COSTS OF THIS APPEAL ARE TAXED TO APPELLANT.**


**FRAISER, C.J., BRIDGES, P.J., BARBER, COLEMAN, DIAZ, KING, McMILLIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.**