[Crim. No. 5000.    Third Dist.    Nov. 8, 1968.]

In re CHESTER VINCENT HELPMAN on Habeas Corpus.

Chester Vincent Helpman, in pro. per., and H. Eugene Netherton, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., and Nelson P. Kempsky, Deputy Attorneys General, for Respondent.

FRIEDMAN, J.—In this habeas corpus proceeding Chester Helpman, a state prison inmate, seeks sentence credit for time served in federal prison.

In March 1964 a federal court sentenced Helpman to two, three-year concurrent terms. The federal authorities then delivered him to the California authorities for trial on an armed robbery charge in Los Angeles County. A jury found

him guilty and on June 22, 1964, he was sentenced to state prison for the term prescribed by law, the term "to run CONSECUTIVELY to time presently owed." Helpman filed a notice of appeal from the state court judgment. He was returned to the federal authorities to complete his federal sentence. He did not wish to complete that sentence and attempted to escape. In January 1965 a federal court imposed a five-year sentence (later modified to three years) for the attempted escape, the sentence to run consecutively upon the dual three-year sentences.

Helpman's appeal in the state courts continued. In August 1966, while he remained in federal prison, the state appellate court reversed his conviction for an evidentiary error of constitutional magnitude. (*People* v. *Falk* (and *Helpman*), 224 Cal.App.2d 398 [54 Cal.Rptr. 488].) The federal officials made him available for retrial on the state charge. This time he pleaded guilty to the armed robbery. On April 3, 1967, the Los Angeles Superior Court sentenced him to state prison, the sentence "to run CONCURRENTLY with any time owed or being served." Eleven days later the federal authorities delivered him to the California Department of Corrections in order to permit concurrent service of his state and federal sentences. Helpman's federal sentences expired conditionally in February 1968 and will be fully discharged in September 1969.

Helpman makes an initial claim: when the state authorities returned him to the federal prison officials in June 1964 they violated the terms of the state court judgment of imprisonment, which decreed his delivery to the California Department of Corrections. He argues that Penal Code section 1202a prohibits deferment of a convicted prisoner's delivery to the California Department of Corrections.[1]

The later-reversed judgment pronounced in June 1964 did not decree an immediate term of imprisonment. Penal Code section 669 authorized the Los Angeles court to impose a consecutive sentence.[2] When a defendant with an incompleted

[1] Penal Code, section 1202a, provides in part: If the judgment is for imprisonment in the State prison the judgment shall direct that the defendant be delivered into the custody of the Director of Corrections at the State prison or institution designated by the Director of Corrections as the place for the reception of persons convicted of felonies, except where the judgment is for death in which case the defendant shall be taken to the warden of the California State Prison at San Quentin."

[2] Penal Code, section 669, provides in part: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent

federal term appears for sentencing in a state court, the court has authority to decide that the state imprisonment shall follow the federal term.[3] Since the term of state imprisonment decreed by the 1964 judgment was consecutive upon the federal sentence, the former commenced only at the termination of the latter. (*In re Pedrini,* 33 Cal.2d 876, 880 [206 P.2d 699] ; *People* v. *McCracken,* 68 Cal.App.2d 574, 576 [157 P.2d 21].) Petitioner's redelivery to the federal authorities after the 1964 Los Angeles judgment violated neither the judgment nor the provisions of section 1202a.

Principally, Helpman asserts entitlement to state-imprisonment credit for his time in the federal prison between June 22, 1964, when the first Los Angeles judgment was pronounced, and April 3, 1967, when sentence was reimposed after Helpman's successful appeal. The prison officials have not given him credit for this period of almost 34 months. Helpman argues that the concurrency feature of the judgment ultimately pronounced in 1967 should relate back to the date of the later-reversed 1964 judgment.

█ Armed robbery is punishable by imprisonment for not less than five years. (Pen. Code, § 213.) Since no maximum is fixed, the maximum term is life imprisonment. (Pen. Code, § 671.) In relation to a life term, the grant or denial of state credit for part of Helpman's federal prison sojourn has no significance. Nevertheless, under the indeterminate sentence law the Adult Authority may fix his term at a definite number of years. Either in that connection or in parole consideration, the period of time with which he is credited has significance.

judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently, or whether the imprisonment to which he is or has been sentenced upon the second or other subsequent conviction shall commence at the termination of the first term of imprisonment to which he has been sentenced, or at the termination of the second or subsequent term of imprisonment to which he has been sentenced, as the case may be; provided, however, if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term. . . .''

[3]So held in *People* v. *Hubert,* 204 Cal.App.2d 617, 619 [22 Cal.Rptr. 450], and *People* v. *Cato,* 13 Cal.App.2d 391, 395 [56 P.2d 1245]. Such decisions are somewhat inconsistent with a dictum in *In re Sichofsky,* 201 Cal. 360, 364-365 [257 P. 439, 53 A.L.R. 615], which expresses the notion that section 669 of the Penal Code deals only with offenses under California law. *Sichofsky,* however, was decided prior to the 1935 amendment of section 669, which extended that statute to permit concurrent and consecutive sentencing for convictions occurring in separate courts. Later California law recognizes that the choice between consecutive and concurrent sentencing may involve an incompleted federal term. (*In re Stoliker,* 49 Cal.2d 75 [315 P.2d 12].)

■ No rule of constitutional, statutory or decisional law directs or permits the concurrency feature of the 1967 judgment to operate "as though" it had been decreed by the later-reversed judgment of 1964. It has been suggested that the constitutional demands of due process and equal protection require credit for prison time served under a judgment reversed on appeal. (See *Patton* v. *North Carolina*, 381 F.2d 636, 638-643; 1965 Duke L.J. 395.) ■ As a matter of California law prison time served under a judgment later invalidated must be credited against any new sentence imposed for the same crime. (Pen. Code, § 2900.1; *In re Levi*, 39 Cal.2d 41, 47 [244 P.2d 403].) Petitioner, however, served no prison time at all under the invalid 1964 judgment. That judgment imposed a deferred term of imprisonment, one scheduled to commence only after he finished his pending federal term. (*In re Pedrini, supra; People* v. *McCracken, supra.*) Its reversal and replacement by a valid judgment occurred before the invalid state term ever commenced. Meanwhile petitioner remained in the federal prison where he would have been had no state judgment been pronounced.

Petitioner's imprisonment between June 1964 and April 1967 was the product of his federal sentence alone, not of the California prosecution. His ineligibility to credit under California law deprives him of no benefit conferred by his federal commitment, since the latter did not establish concurrency during the period for which he claims credit. (*In re Gullatt*, 69 Cal.2d 395, 397-398 [71 Cal.Rptr. 676, 445 P.2d 292].) As a matter of federal law he was not serving a sentence concurrent with his California term until the federal authorities transferred him to the custody of the State Department of Corrections in April 1967. (*In re Yutze*, 69 Cal.2d 389, 392-393 [71 Cal.Rptr. 673, 445 P.2d 289].)

■ Petitioner relies on the rule that retrial must not result in a heavier penalty than that imposed after the first trial. (See, e.g., *People* v. *Henderson*, 60 Cal.2d 482, 495-496 [35 Cal.Rptr. 77, 386 P.2d 677].) The judgment under which he is now detained, that of April 1967, did not add the preceding 34 months to his state sentence, for the 34 months' imprisonment was the product of his federal sentence alone. The 1964 California judgment denied concurrency with his federal term, the 1967 judgment permitted it in part; thus the new penalty was lighter, not harsher, than the one it replaced. (Cf. *People* v. *Ali*, 66 Cal.2d 277, 281-282 [57 Cal.Rptr. 348, 424 P.2d 932].)

The situations evoking the problem of credit for confinement suffered before resentencing have been analyzed and annotated at length. (See Agata, *Time Served Under a Reversed Sentence or Conviction,* 25 Mont. L. Rev. 1-74; Annot., 35 A.L.R.2d 1283.) The present facts represent a variation outside the usual pattern, because the time lapse between the first and second judgments is not at the root of the prisoner's claim. The claim grows from another source, the varying exercise of discretionary power by two judges. The 1964 judge chose to withhold concurrency, the 1967 judge to grant it. The consecutive sentence imposed in 1964 had no connection with the flaw in the trial, because the flaw was revealed only by the later reversal on appeal. On the assumption that "fairness" requires petitioner to be placed as he would have been had the 1964 judgment been flawless, the judge who pronounced it would still have imposed a consecutive term, such being his determination of the appropriate sentencing treatment. Possibly—although the record supplies no inference one way or the other—the judge who decreed concurrency in 1967 was motivated by the lapse of time. To transport his discretionary decision backward in time to the date of the first judgment would supply the prisoner with a bonanza not intended by either judgment and not impelled by law or the urgings of fairness.

Finally, in his petition prepared prior to appointment of counsel, Helpman argues that the proviso in the first sentence of Penal Code section 669 (fn. 2, *supra*) prohibited the 1964 consecutive sentencing for armed robbery, which bears a maximum life sentence. The penalty for first degree robbery ("not less than five years") is outside the statutory proscription. (*People* v. *White,* 222 Cal.App.2d 774, 780 [35 Cal. Rptr. 571].)

The petition is denied and the order to show cause discharged.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied December 3, 1968, and petitioner's application for a hearing by the Supreme Court was denied December 30, 1968.