[Crim. No. 34058. Second Dist., Div. Five. Nov. 14, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMMY EUGENE VEASEY, Defendant and Appellant.

[Crim. No. 35710. Second Dist., Div. Five. Nov. 14, 1979.]

In re TOMMY EUGENE VEASEY on Habeas Corpus.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and William Wesley Patton, Deputy State Public Defender, for Defendant and Appellant and Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Sandy R. Kriegler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUS, P. J.—Defendant was convicted by a jury of possession of heroin (Health & Saf. Code, § 11350) and sentenced to the upper term of three years, the term "to run consecutive with any federal sentence." He appeals from the judgment. He has also filed a petition for writ of habeas corpus which we have consolidated for hearing with the appeal.

The sufficiency of the evidence is not in issue. On March 8, 1978, police officers went to apartment 1 at 3738 Nicolet Avenue in Los Angeles to serve a search warrant authorizing them to seize narcotics and related paraphernalia. Through the window, one officer saw three men sitting at a table on which there was a funnel with a balloon attached to it. When the officers rang the doorbell and announced their identity and purpose, two of the men jumped up and ran toward the kitchen. Fearing that evidence might be destroyed, the officers broke down the door. When they entered, they discovered defendant standing at the kitchen sink with his hands immersed in water. He was holding a plastic baggie which contained a brown substance later identified as heroin. Also discovered in the apartment was more heroin, the funnel and balloon, a sugar substance used to "cut" heroin, and $100 in cash.

In his defense, defendant testified that he did not live at the Nicolet Avenue apartment. Before the police arrived, he was playing cards and had just stepped to the sink to get a glass of water when the police broke down the door. At that moment, someone handed him a baggie and told him to dump it and he complied.

### 1. *The Appeal - Case No. 34058*

On the appeal, defendant attacks the sufficiency of the affidavit in support of the search warrant. In the affidavit, Los Angeles Police Officer Donald Brown sets forth that he had received 40 hours of training and had read many books and articles on the "appearance, use, effects, packaging and distribution" of narcotics and dangerous drugs. In addition, he had been assigned to narcotics investigations for over 3½ years, had participated in 2,000 such investigations, had arrested 1,000 people for narcotics violations, and had qualified in court as a narcotics expert about 100 times.

During the week ending March 4, 1978, a "confidential, untested informant"—sex not revealed—told Brown that defendant was selling heroin at the Nicolet Avenue apartment. The informant described defendant and also stated that if defendant was not at the apartment he or she would buy heroin from a woman named "Smokey," whom he or she also described. The informant provided a telephone number which he or she would call to set up the transactions.

During that same week, Brown listened to a telephone conversation between the informant and a woman who identified herself as "Smokey." The informant asked to speak to "Tommy," but Smokey said that he was asleep. The informant asked if defendant could "do a small thing of boy now" and Smokey said that he could. In Brown's opinion, "a small thing of boy" referred to a $25 or $50 quantity of heroin. The telephone number dialed by the informant was listed to the Nicolet Avenue apartment.

Brown concluded from a physical examination of the informant that he or she was a heroin user. He also concluded that defendant and Smokey were selling heroin and were in possession of heroin at the Nicolet Avenue apartment.

■ Defendant now argues that the affidavit was deficient in that it did not comply with the requirement articulated in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], that an affidavit in which the hearsay statements of an informant are relied upon to establish probable cause must contain facts from which the magistrate may conclude that the informant was credible or his information reliable. He points out that information from an untested informant needs

corroboration (*People* v. *Lara* (1967) 67 Cal.2d 365, 374-375 [62 Cal.Rptr. 586, 432 P.2d 202]) and then contends that here there was none.

In making this argument, defendant does not overlook the potential corroborating effect of the telephone conversation in which Smokey said that defendant could "do a small thing of boy." He argues, however, that the magistrate had no reasonable basis upon which to accept Brown's conclusion that these terms referred to a quantity of heroin because the affidavit did not state that Brown was an expert in "street language," but only that he had expertise in the "appearance, use, effects, packaging, and distribution" of narcotics.

In reviewing the sufficiency of an affidavit to a search warrant, we do not examine it as if it had been drafted by a Wall Street law firm. Our touchstone is common sense. (*United States* v. *Harris* (1971) 403 U.S. 573, 577 [29 L.Ed.2d 723, 730, 91 S.Ct. 2075]; *People* v. *Mesa* (1975) 14 Cal. 3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337].) It defies common sense to believe that Brown could have conducted 2,000 narcotics investigations over a 3½-year period and not have been intimately familiar with the street terms for narcotics. We conclude that the telephone conversation with Smokey, coupled with Brown's interpretation of the more esoteric portions of it, constituted substantial corroboration of the informant's information.[1]

Defendant also contends that he is entitled to good time/work time credits under Penal Code sections 2900.5 and 4019. Whether such credits are available for presentence custody is a question presently pending before the state Supreme Court.[2] Faced with a similar contention in a recent case, that court left the question open, assuring the defendant that he would "be in a position to seek any relief that might be due him by commencing appropriate writ proceedings after decision in the pending cases." (*People* v. *Wende,* 25 Cal.3d 436, 443, fn. 4 [158 Cal.Rptr. 839, 600 P.2d 1071].) With that assurance to this defendant we shall follow the same tack in this case and also leave the question open.

---

[1]Defendant's authorities ·*People* v. *Dunkel* (1977) 71 Cal.App.3d 928 [139 Cal.Rptr. 685] and *People* v. *Pellegrin* (1977) 78 Cal.App.3d 913 [144 Cal.Rptr. 421] are easily distinguishable. In neither of those cases did the record show that the officer whose conclusions were relied upon to establish probable cause had the massive experience with narcotics investigations as Brown in the present case.

[2]*People* v. *Sage,* Crim. 20997; *People* v. *Brown,* Crim. 20098; *In re Davis,* Crim. 20999; *People* v. *Galloway,* Crim. 21182; and *In re Ferrier,* Crim. 21183.

## 2. *Petition for Writ of Habeas Corpus - Case No. 35710*

In his habeas corpus petition, defendant alleges the following facts, none of which is disputed by the Attorney General: On October 20, 1976, defendant pleaded guilty in federal district court to one count of distributing and dispensing a controlled substance (21 U.S.C. § 841(a) (1)). On January 31, 1977, that court sentenced him to three years imprisonment, with five months to be served in "a jail-type institution"; the execution of the remainder of the sentence was suspended and defendant placed on probation for a five-year period.[3]

Defendant was sentenced in the present case on January 2, 1979, to the upper term of three years. That sentence was ordered to be served consecutively to "any federal term." Later, on March 26, 1979, probation was revoked in the federal case and defendant was ordered to serve the remainder of the three-year federal term. Defendant, who is presently in state custody, now asserts that since his state term was ordered to run consecutively to the federal term, the state term should be for only eight months—one third of the middle term of the state offense of which he was convicted. (See Pen. Code, § 1170.1, subd. (a).)

■ Before we plunge into the specifics of defendant's argument, we must address a threshold issue presented by the Attorney General. He asserts that because defendant was on probation with respect to the federal offense at the time of the sentencing in the state case, there was in fact no federal term as to which the state term could be ordered to run consecutive and therefore the trial court had no jurisdication to order a consecutive term.

Before 1979, Penal Code section 669 read in relevant part as follows: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently, or whether the imprisonment to which he is or has been sentenced upon the second or other subsequent conviction shall commence at the termination of the first term of imprisonment to which he has been sentenced, or at the termination of the second or

---

[3]See 18 United States Code section 3651, which permits imposition of part of a sentence and suspension of execution of the remainder during a period of probation.

subsequent term of imprisonment to which he has been sentenced, as the case may be; . . ." This language was interpreted to permit a California court to sentence a defendant either consecutively or concurrently to sentences previously imposed by other jurisdictions, including the federal. (See *In re Stoliker* (1957) 49 Cal.2d 75, 77-78 [315 P.2d 12]; *In re Helpman* (1968) 267 Cal.App.2d 307, 309-310 [72 Cal.Rptr. 753].)

At the same time it was recognized that where a defendant had been granted probation on his first conviction, the applicability of section 669 to the later judgment and sentence depended upon the form of the earlier judgment. Thus it was held that where a defendant had initially been granted probation following the suspension of imposition of sentence, the court sentencing the defendant pursuant to a later judgment could not order that sentence to run consecutively to the first "sentence" because there was no sentence yet in existence. (*People* v. *Carter* (1977) 75 Cal.App.3d 865, 872-873 [142 Cal.Rptr. 517]; *In re Nafe* (1965) 237 Cal.App.2d 809, 811-813 [47 Cal.Rptr. 457].) Where, however, the initial judgment provided that sentence was imposed and only its execution suspended during the period of probation, a later sentence could be ordered to run consecutively to the initial one. (*Id.*)[4]

The federal statute which sets forth the procedures for granting probation after conviction of a federal offense (18 U.S.C. § 3651) provides alternative procedures which parallel the two California methods. Thus probation may be granted following the suspension of "imposition or execution of sentence" or, where the offense carries a maximum term of more than six months, sentence may be imposed and the defendant granted probation on the condition that he be confined for a portion of the term, execution of the remainder of the sentence being suspended during the probationary period. The latter procedure—the one followed in the instant case—is, for purposes of determining the applicability of section 669, in effect the same as the California method of imposing sentence and suspending its execution. Here, the three-year federal sentence was imposed—indeed, it was partially executed—and the balance of the sentence was suspended. Since at the time of the sentencing for the state offense there was an uncompleted federal sentence in existence, section 669 empowered the state court to order the state sentence

---

[4]Apparently recognizing that the distinction between the two types of initial judgments was, for purposes of section 669, more formal than substantial, the court in *People* v. *Carter, supra,* labelled that distinction "anomalous." Nevertheless, the *Carter* court followed the rule because it "is the law. . . ." (*Id.,* pp. 872-873.)

to run consecutively to the federal one. (Cf., *In re Helpman, supra,* 267 Cal.App.2d at pp. 309-310.)

The Attorney General relies, however, upon a recent amendment to section 669 which, among other things, changed the statute to provide that the decision as to whether a term will run consecutively to or concurrently with another term must be made at the time of the "second or other subsequent judgment *upon which sentence is ordered to be executed....*" (Italics added.) Thus, the argument goes, because the federal term was not ordered executed until after the state judgment, the state court had no statutory authorization for ordering a consecutive term.

■ We need not answer the question of the effect of the amendment of section 669 to a case such as the instant one, where the previous term was partially executed. The change of language to which the Attorney General adverts was effective January 1, 1979, and was expressly made applicable only to crimes committed on or after that date. (Stats. 1978, ch. 579, §§ 28, 48.) Since both the federal offense and the state offense were committed before January 1, 1979, the amendment to the statute can have no application here.

■ Having determined that the state court had the power to order the state sentence to run consecutively to the federal term pursuant to section 669 as it formerly read, we turn to defendant's primary contention—that since the state sentence was a consecutive one, the state court should have sentenced him to one-third of the middle term of the offense of conviction, which in this case translates into an eight-month term.[5]

Penal Code section 1170.1, subdivision (a), sets forth the procedure by which consecutive terms are to be calculated "when any person is convicted of two or more felonies...." The subdivision states that the "aggregate term" is the sum of the "principal term," the "subordinate term," "and any additional term imposed pursuant to Penal Code section 667.5.[6] The "principal term" is defined as "the greatest term of

---

[5]Violation of Health and Safety Code section 11350 carries a range of terms of 16 months, 2 years, and 3 years. (See Pen. Code, § 18.) One-third of two years is eight months.

[6]Section 667.5 provides for additional terms where the defendant has sustained multiple ·convictions of certain highly dangerous felonies such as murder or rape. The section is inapplicable in the present case.

imprisonment imposed by the court for any of the crimes" including any enhancements under sections 12022, 12022.5, 12022.6, or 12022.7. The "subordinate term for each consecutive offense" is one-third the middle term "for each other felony conviction for which a consecutive term of imprisonment is imposed . . . ."

In effect, defendant claims that his federal sentence should be treated as the "principal term" and the state sentence as the "subordinate term." He argues that the Legislature's intention in that regard can be inferred from the fact that some of the wording of section 1170.1, subdivision (a) is similar to that of section 669, and that since the latter section has long been held to authorize the imposition of a state sentence to run consecutively to a federal sentence, if the Legislature had intended that the procedures of section 1170.1, subdivision (a) were not to be followed in that context, it would have said so.

Although both of the statutes refer to multiple convictions suffered "in the same proceeding or court or in different proceedings or courts, and . . . by judgment rendered by the same judge or by different judges . . . ," a careful reading and analysis of section 1170.1, subdivision (a) reveals that the procedures set forth there were intended to be followed only where the principal and subordinate terms both resulted from California convictions. Section 1170.1, subdivision (a) appears to have been carefully fashioned to accommodate the numerous variables peculiar to California's determinate sentencing scheme. Thus the "principal term" is defined as including "enhancements" imposed under specific Penal Code sections. Its companion, the "subordinate term," consists of one-third of the "middle term" of each conviction which is to run consecutively to the principal term and may include one-third of the terms of enchancements only if the consecutive offense is one of the "highly dangerous" offenses listed in section 667.5. The total of subordinate terms may not exceed five years unless the consecutive offenses are "highly dangerous" felonies. Thus, while the statute was drafted with an eye toward the potentially harsh result of simply stacking determinate terms one on top of the other, it contains counterbalancing provisions applicable when the offenses are particularly dangerous ones. These trade-offs make sense only in reference to determinate terms imposed within the context of the Determinate Sentencing Act. Although it is possible—as defendant contends—to conceive of a sentence from a foreign jurisdiction operating as a "principal term," this functional analysis of the role played by section 1170.1, subdivision (a) in California's sen-

tencing scheme strongly suggests that that was not the Legislature's intent.

■ Moreover, it is a fundamental tenet of statutory construction that "[s]tatutes should be construed so as to be given a reasonable result consistent with the legislative purpose." (*People* v. *Superior Court* (1969) 70 Cal.2d 123, 132 [74 Cal.Rptr. 294, 449 P.2d 230].) ■ One of the stated purposes of the Determinate Sentencing Act is to eliminate disparity and provide uniformity of sentences. (Pen. Code, § 1170.) Yet if we adopt defendant's interpretation of section 1170.1, subdivision (a), that purpose would be frustrated in a most arbitrary fashion. Consider the following hypothetical: A is tried and convicted of a federal offense and of a separate state offense. Sentencing on the federal offense is scheduled for Monday and on the state offense it is set for Tuesday. Both judges have independently determined that they intend to set a three-year sentence to run consecutively to any other sentence A has been ordered to serve. The federal judge so sentences A and on the next day, following defendant's interpretation of section 1170.1, subdivision (a), the state judge may sentence A to only a one-year subordinate, consecutive term.[7] A is thus subject to a total potential term of four years. If, however, the state sentencing had fortuitously been scheduled to precede the federal sentencing, each judge could impose a three-year term and the total potential term would be six years. Since the subordinate term concept is peculiar to California law, the only means of avoiding this disparity is to recognize that there can be a subordinate term only when the principal term flows from a conviction of a California offense.[8]

■ Defendant maintains, however, that such an interpretation of the statute denies him equal protection of the laws. He postulates an individual who has been convicted of two state offenses, the middle terms of which are three years and two years respectively. Under section 1170.1, subdivision (a), this person would be subject to an aggregate term of

---

[7]For the sake of convenience, our hypothetical assumes that the middle term for the state offense is three years.

[8]The Judicial Council reached precisely the same conclusion when it drafted rule 451(b) of the California Rules of Court. That rule provides that when a California court imposes a sentence to run consecutively to a sentence previously imposed by another jurisdiction, "the judgment shall specify the determinate term imposed under section 1170 computed without reference to the sentence imposed by the other jurisdiction,..." The Advisory Committee comment states that this provision "is necessary to avoid the illogical conclusion that the total of the consecutive sentences will depend on whether the other jurisdiction or California is the first to pronounce judgment."

three years eight months, while defendant's potential term of imprisonment is six years.

We see no equal protection violation. "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner. [Citation.]" (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) Defendant is not similarly situated to the individual who has suffered only state convictions with respect to the total period of time he may be required to serve. The latter is subject to a determinate term of imprisonment of three years and eight months subject to dimunition only by acquisition of good time and work time credits (Pen. Code, § 2931), after which he is subject to a three year period of parole (Pen. Code, § 3000, subd. (a)). In contrast, defendant's federal sentence is essentially an indeterminate one: the federal court's three-year sentence was imposed pursuant to 18 United States Code section 4205 (b) (2), which grants the federal parole board complete discretion to release him on parole whenever it deems such release appropriate—even before the one-third of the sentence which a federal prisoner must serve if he has been sentenced under other provisions of federal law. (*Edwards* v. *United States* (8th Cir. 1978) 574 F.2d 937, 941.)

The point is that defendant's consecutive sentence cannot be compared to a consecutive sentence imposed entirely for state offenses because the federal sentence is fundamentally different in nature from that of the state. Defendant's federal imprisonment can end whenever the federal parole board deems it appropriate. Although defendant could potentially serve the entire three years of the federal term, he could also serve much less time—indeed, the total period of his federal and state confinement could be less than the total term of the individual who has been sentenced to consecutive state terms to whom he seeks to compare himself. Since he is not similarly situated with respect to the hypothetical state prisoner, there is no denial of equal protection. (See *In re Eric J., supra.*)

■ This does not end the matter. Rule 451(b), California Rules of Court, provides: "When a defendant is sentenced under section 1170 and the sentence is to run consecutively to a sentence imposed by a court of the United States or of another state or territory, the judgment shall specify the determinate term imposed under section 1170 computed without reference to the sentence imposed by the other jurisdiction,

shall order that the determinate term shall be served commencing upon the completion of the sentence imposed by the other jurisdiction, and shall identify the other jurisdiction and the proceedings in which the other sentence was imposed." Although the trial court properly specified the duration of the determinate term in accordance with the rule, the judgment otherwise simply stated that the determinate term would run "consecutive with any Federal sentence." The judgment should be modified to specify the federal case to which the court was referring and to reflect that the state sentence will commence after the completion of the sentence in the federal case.

■ Finally, defendant contends that even if we do not accept his other arguments, the fact that his state sentence has been ordered to run consecutively to the federal sentence requires that he must now be transferred to the federal authorities to complete that term. If defendant has not in fact completed the federal term, his point is valid. (See *In re Helpman, supra,* 267 Cal.App.2d at pp. 309-310; Cal. Rules of Court, rule 451 (b).) At this time, however, we do not know whether the federal term has been completed or not. Consequently, at the time the trial court modifies its judgment in conformity with the views expressed in this opinion, it should determine the status of defendant's federal sentence and, if it concludes that that term has not been served, should order defendant transferred to federal custody to complete it before the state term is recommenced.

In case number 34058, the judgment of conviction is affirmed.

In case number 35710, the relief prayed for in the petition for writ of habeas corpus is granted in the following respects: the matter is returned to the superior court so that that court may modify the judgment in compliance with rule 451(b) of the California Rules of Court, and the views expressed herein. At the time the judgment is modified, the superior court shall determine whether defendant's federal term has been completed. If it has not, defendant must be ordered to be transferred to federal custody for completion of that term. In all other respects, the relief requested in the petition for writ of habeas corpus is denied.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied December 4, 1979, and appellant's petition for a hearing by the Supreme Court was denied January 8, 1980.