[Crim. No. 1833.  Second Appellate District, Division One.—September 13, 1929.]

THE PEOPLE, Respondent, v. MIKE PUPPILO, Appellant.

Wm. T. Kendrick, Jr., and W. T. Kendrick for Appellant.

U. S. Webb, Attorney-General, Alberta Belford, Buron Fitts, District Attorney, and William R. McKay, Deputy District Attorney, for Respondent.

HAHN, J., *pro tem.*—The defendant, Mike Puppilo, was charged in an information filed by the district attorney of Los Angeles County, in each of two counts with a violation of section 2 of the so-called "Gun Law," being an act of the legislature adopted in 1923 (Act 1970, p. 662, Deering's Gen. Laws 1923).  The portion of the section material to our discussion reads as follows:

''On and after the date upon which this act takes effect no unnaturalized, foreign born person . . . shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person. The terms 'pistol,' 'revolver,' and 'firearms capable of being concealed upon the person' as used in this act shall be construed to apply to and include all firearms having a barrel less than twelve inches in length. Any person who shall violate the provisions of this section shall be guilty of a felony, and upon conviction thereof shall be punished by imprisonment in a state prison for not less than one year nor for more than five years.''

The charging portions of the information read as follows:

Count I: ''The said Mike Puppilo is accused by the District Attorney of and for the County of Los Angeles, State of California, by this information, of the crime of Violation of Gun Law, Assembly Bill 363, a Felony, committed as follows: That the said Mike Puppilo on or about the 24th day of July, 1928, at and in the County of Los Angeles, State of California, was an unnaturalized, foreign-born person and the said Mike Puppilo then and there did wilfully, unlawfully and feloniously have in his possession and under his control a firearm having a barrel less than twelve inches in length, to-wit, a pistol.''

Count II: ''For a further and separate cause of action, being a different offense of the same class of crimes and offenses as the charge set forth in Count I hereof, the said defendant is accused by the District Attorney of and for the County of Los Angeles, State of California, by this information, of the crime of Violation of the Gun Law, Assembly Bill 363, a Felony, committed as follows: That the said Mike Puppilo on or about the 24th day of July, 1928, at and in the County of Los Angeles, State of California, was an unnaturalized, foreign-born person, and that the said Mike Puppilo then and there did wilfully, unlawfully and feloniously have in his possession and under his control a firearm having a barrel less than twelve inches in length, to-wit, a pistol.''

The jury returned a verdict of ''guilty'' as to the charge in count I and ''not guilty'' as to the charge in count II.

Appealing from the judgment of conviction and the order denying his motion for a new trial, defendant and appel-

lant urges several grounds for reversal. Inasmuch as we have arrived at the conclusion that the judgment must be reversed for the reason that the evidence discloses that but one offense was committed, and the verdict of "not guilty" rendered as to count II acquitted the defendant of that offense, we will limit our *résumé* of the evidence to such as may seem necessary to the discussion of this point.

On behalf of the prosecution, a police officer by the name of F. L. James testified that on the twenty-fourth day of July, 1928, he, together with two other police officers, arrested the defendant about 4 o'clock in the afternoon at his place of business at Twelfth and Western Avenue in the city of Los Angeles; that the defendant told him he resided at 2902 Palm Grove Avenue; that about two hours later the witness, together with Lieutenant Jones, another police officer, went to the residence at 2902 Palm Grove Avenue, the defendant not being present, and there searched the premises; that there were present in the house at that time Mrs. Mike Puppilo, wife of defendant, Mrs. Otto Puppilo, his sister-in-law, and a little boy; that in a trunk in the front room of the house they found a 32-caliber Smith and Wesson revolver, which was subsequently admitted in evidence as People's Exhibit 1. The witness further testified that in a bureau drawer in a bedroom in the same house they found a 22-caliber Harrington and Richards revolver, which later was admitted in evidence as People's Exhibit 2.

Over the objection of defendant's counsel that no proper foundation had been laid therefor, and no *corpus delicti* shown, the witness was permitted to testify that subsequent to the finding of the revolver in question he had a talk with the defendant in the office of the detective bureau at Central Police Station, at which time the defendant again gave his residence as 2902 Palm Grove Avenue, and stated that the Smith and Wesson revolver, which was shown him by the officers, was his revolver, and that the Harrington and Richards revolver was the property of his wife. Whereupon, the district attorney requested that the Smith and Wesson revolver be admitted in evidence as People's Exhibit 1 and the Harrington and Richards revolver admitted in evidence as People's Exhibit 2. Defendant objected to the introduction of each of the revolvers on the ground that

the same was incompetent, irrelevant and immaterial, which objections were overruled.

On behalf of the defense, the defendant's wife took the stand and testified that she resided with her husband, child and sister-in-law at 2902 Palm Grove Avenue in the city of Los Angeles; that she was at home on July 24, 1928, when the officers came and searched the house and found the two pistols put in evidence; that the 32-caliber Smith and Wesson revolver was found in a trunk, which the witness unlocked to enable the officers to search it; that this revolver was found by the witness in the defendant's billiard-room in Chicago while the defendant was absent in Italy in January of 1928; that she took the revolver from the billiard-room and placed it in a trunk; that the defendant had no knowledge of the fact that she had taken the revolver and put it in the trunk nor had he any knowledge that the revolver had been brought to California; that he had never to her knowledge seen the revolver in California, and in fact the revolver had never been removed from the trunk since it had been brought to California, until the officers found it. She further testified that the other revolver found by the officers in the dresser drawer in their home was her revolver; that during the defendant's absence in Italy in the spring of 1928, while she was visiting in Springfield, Illinois, she purchased the revolver and took it home with her and kept it; that the defendant had never seen it and to her knowledge did not know that she possessed it; that they had no cartridges to fit either of the revolvers.

It is urged by appellant that under the evidence, assuming for the argument that the evidence before the jury was all properly admitted, only one offense appears to have been committed, and that inasmuch as the jury returned a verdict of "not guilty" as to count II, the verdict of "guilty" as to count I becomes a nullity.

We are of the opinion that appellant's contention that the facts shown by the evidence constituted but one offense must be sustained. The evidence without conflict shows that the two revolvers were found in the residence of the defendant at the same time, on July 24, 1928. Assuming that there is competent evidence to support the district attorney's contention that both of the revolvers were in the custody and control of the defendant, we cannot

conceive upon what theory it can be maintained that he was guilty of two separate, distinct crimes. If at the time the defendant was arrested the officers had found the Smith and Wesson revolver in defendant's hip pocket and the other revolver in the defendant's inside coat pocket, it could not be successfully contended that the defendant, by having two revolvers on his person, was guilty of two offenses. The act denounced by the statute is the possession of a firearm, as therein described. While it is true that the singular number is used, it is almost axiomatic, and is in fact so provided by our statutes, that the singular number includes the plural. (Sec. 14, Civ. Code.)

The principle here involved has been repeatedly recognized by courts of this and other jurisdictions. In the case of *People* v. *Stephens,* 79 Cal. 428 [4 L. R. A. 845, 21 Pac. 856], the defendant was charged with the publication of a libelous statement. It appears that the defendant had been previously acquitted of a similar charge arising out of the publication of the same article, although in the first trial the libelous matter charged differed from that upon which the defendant was the second time brought to trial. The court in reversing the judgment held that, inasmuch as the defendant had previously been placed on trial charged with the publication of the same article, although it was a different portion than that which was set forth in the second information, his plea of once in jeopardy was good, as the publication of the entire article, if libelous, constituted but one offense.

So in the case of *Fisher* v. *Commonwealth,* 1 Bush (Ky.), 211 [89 Am. Dec. 620], the defendant stole a horse, wagon and harness at the same time. He was first charged by information with stealing the horse. Of this charge he was acquitted. When he was brought to trial upon a second information charging the stealing of the wagon and harness, he set up the plea of former jeopardy by reason of his acquittal of the charge of stealing the horse. This was held good for the reason that the horse, wagon and harness having been taken at the same time, there was but one offense committed.

In the case of *State* v. *Benham,* 7 Conn. 414, it appears that the defendant was arrested charged with having in his possession two forged bank notes, one of the Troy Bank

and the other of the Mechanics' Bank. He was first brought to trial upon an information charging possession of the forged Mechanics' Bank note, of which charge he was found guilty. Subsequently, when brought to trial upon an information charging him with the offense of having in his possession the forged Troy Bank note, he put in a plea of former jeopardy by reason of the trial upon the Mechanics' Bank note. This plea was sustained upon the ground that having possession of the two forged notes at the same time constituted but one offense.

In *People* v. *Willard*, 92 Cal. 482 [28 Pac. 585, 587], the defendant was charged with having received stolen property. It appears that the defendant's alleged husband had burglarized the house of one Hazzard, and also the house of one Williams. Goods from both places were found in the possession of the defendant. The court in commenting on this fact said: "The same proof and the only proof of the receipt of the Hazzard goods on or about March 11, equally proves a receipt of the Williams' goods at the same time, and if both were received at the same time, it was but one offense, and acquittal on the first charge was a bar."

The attorney-general in his brief in urging the same theory as did the district attorney in the course of the trial, namely, that because two revolvers were found in the defendant's house, he was guilty of two separate offenses, has cited the case of *People* v. *Degnen*, 70 Cal. App. 567 [234 Pac. 129], as supporting this theory. There is nothing in this case which conflicts with the authorities cited in support of appellant's contention. In the Degnen case, one count charged the defendant with assault with intent to commit murder and the other count charged the defendant with the crime of rape. Mr. Justice Works discusses at some length the question as to whether or not the demurrer filed to the indictment was good, and held that the demurrer was not well taken in that the crime charged in each count constituted a separate offense. The appellant in that case, as here, urged that the evidence showed that but one offense, if any, had been committed, in that all of the acts that formed the basis of both counts occurred at the same time. The court definitely refused to determine the question as to whether or not the facts in that case constituted but one offense. Nor does the case of *People* v. *Stone*, 199 Cal. 610

[250 Pac. 659], cited by the attorney-general, aid in the determination of the question. There the evidence clearly showed that two children met their deaths through criminal agencies. The defendant was charged in one count with the murder of one child and in the other count with the murder of the other child. The taking of the life of each child constituted a separate offense even though the killing of both was accomplished by the same act or simultaneously. So, too, the case of *People* v. *Pozzi,* 91 Cal. App. 150 [266 Pac. 860], is not in point. There the defendant was charged with maintaining a nuisance on three separate days. The maintaining of the place on each day was declared a separate offense. This ruling is in harmony with the long line of decisions that hold the doing of a prohibited act, or the maintaining of a prohibited place on each day constitutes a separate offense.

The case of *People* v. *Follette,* 74 Cal. App. 178 [240 Pac. 502], is urged as a complete answer to appellant's contention on this point. In that case it appears that an indictment had been found charging the defendant with perjury. Subsequently, a second indictment was returned by the grand jury charging defendant with perjury. The second indictment included all of the matters set forth in the first indictment and in addition thereto, other separate instances wherein the defendant was alleged to have committed perjury. It was evidently the intention of all of the parties, including the district attorney, the defendant and the court, that both cases should be consolidated and tried as one case, and the trial was so conducted. The jury brought in but one verdict, finding the defendant "guilty of perjury as charged in the indictment." This verdict carried the number 21,289, which was the number of the second indictment. It was urged by appellant that the failure of the jury to return a verdict on the first indictment operated as a verdict of acquittal of the charges in the first indictment, and that having thus been acquitted of the charges contained in the first indictment, which charges were also contained in the second indictment, the acquittal on the first indictment was so in conflict with the verdict of guilty on the second indictment that its effect was to nullify the verdict returned. Mr. Justice Curtis in writing the opinion in the Follette case points out that there were other instances of perjury

set forth in the second indictment that did not appear in the first indictment, and that the effect of the failure to bring in a verdict on the first indictment was simply to furnish to the defendant a plea of "former jeopardy" in the event he was put to trial upon the matters charged in the first indictment. So, too, the case of *People* v. *Rabe,* 202 Cal. 409 [261 Pac. 303], is clearly distinguishable from the facts in the instant case. There the defendant was charged in several counts with obtaining money under false pretenses. The false representations were all made at the same time, but the money was obtained from the complaining witness at different times. The opinion points out, in discussing the question as to whether the facts constitute one or more crimes, that the actual obtaining of the money by defendant constituted an essential element of the crime and not until the money was received was the crime complete. Hence, each time the defendant obtained money from his victims, a separate offense was committed.

If the evidence showed that on July 24, 1928, the defendant was in possession of the Smith and Wesson revolver and on some subsequent day he was in possession of the Harrington and Richards revolver, then each possession would constitute a separate offense, but under the evidence as shown by the record, possession of both revolvers was simultaneous in point of time. These facts would, we are satisfied, constitute but one offense.

The attorney-general interprets the verdicts of the jury as meaning that the jury in returning their verdict of guilty as to the first count did so upon the belief that the Smith and Wesson revolver was the property of the defendant, while the Harrington and Richards revolver was the property of Mrs. Puppilo, the defendant's wife.

Unfortunately for this contention, there is nothing in count I from which it can be determined that that count referred to the Smith and Wesson revolver, nor is there anything in count II to indicate that that count referred to the other revolver. We have, therefore, concluded that the verdict of not guilty as to the crime charged in count II operates as an acquittal of the offense. Hence, the verdict of guilty as to count I becomes a nullity and of no effect.

In view of our conclusion upon the point we have discussed, we do not deem it necessary to consider the other

questions raised and discussed in the briefs filed. ■ We are moved to suggest that there is some doubt in our minds as to the sufficiency of the language used in the information to state a public offense. The wording ''the crime of violation of Gun Law, Assembly Bill 363,'' is, to say the least, very indefinite, if, indeed, it has any worth as a pleading.

The judgment and the order denying a new trial are reversed.

Houser, Acting P. J., and York, J., concurred.