[Crim. No. 29901. Second Dist., Div. Four. Dec. 14, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
NARDELL ULYSSES CARTER, Defendant and Appellant.

[Crim. No. 30185. Second Dist., Div. Four. Dec. 14, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
LEWIS BROWN et al., Defendants and Appellants.

**COUNSEL**

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Richard A. Curtis and Paul D. Fogel, Deputy State Public Defenders, for Defendant and Appellant Carter.

Alan M. Oller, under appointment by the Court of Appeal, for Defendant and Appellant Brown.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and Alexander W. Kirkpatrick, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FILES, P. J.**—In case No. 30185, defendant Carter appeals from the judgment following his conviction of one count of forgery (Pen. Code, § 470) and three counts of possession of a completed check with intent to defraud (Pen. Code, § 475a). In the same case, defendant Brown pleaded guilty to one count of forgery (Pen. Code, § 470) and appeals under Penal Code section 1538.5, subdivision (m), for a review of a search and seizure issue.

In case No. 29901 defendant Carter appeals from an order revoking probation and ordering execution of a prison sentence which had been imposed and suspended in 1974.

The only novel issue to be discussed is whether the simultaneous possession of several checks may constitute multiple violations of Penal Code section 475a.[1] We have concluded that in this case there was only one such offense.

*The search and seizure.*

On the afternoon of July 13, 1976, two officers went to a shopping center in response to a report that two men had attempted to pass a stolen check at a food market. They were given a physical description of the two men, and were told the men would be found in a drug store in the same shopping center. At the drug store they were told that earlier in the day a woman had been arrested there for attempting to pass a xerographic copy of a prescription, and that two men had later come into the store asking for her. The description given for those men correspond-

---

[1]Penal Code section 475a: "Every person who has in his possession a completed check . . . with intention to utter or pass the same . . . to defraud any person, is punishable by imprisonment . . . ."

ed with the descriptions from the market. The market manager supplied the license number of the automobile in which the men had departed.

A short time later the described vehicle returned to the shopping center parking area. The two occupants met the descriptions which had been given. Defendant Carter was driving and defendant Brown was seated alongside him. As Carter stepped out of the car Brown reached into his pockets and appeared to take out things which he placed under the dashboard. This procedure was repeated rapidly. The officer, who had had training in the effects of drug usage, observed that Carter's appearance and behavior indicated the influence of an opiate. Brown was asked to step out, and the officer formed the same opinion of his condition. Both were arrested for being under the influence of an opiate in violation of Health and Safety Code section 11550.

On the front seat of the vehicle were a number of xerographic copies of prescription forms. Closer inspection revealed that there were 15 of those forms, filled out with different names and for different drugs.

The officers then proceeded to search the vehicle and found, among other things, the checks which became the basis of the forgery and check possession charges.

It was proper for the officers to search the vehicle for evidence of the offense for which the occupants had been arrested—in this case, narcotics. (See *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 813, fn. 2 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) ■ Upon discovery of the apparently fraudulent xerographic prescription forms, it was also reasonable for the officers to conclude that the vehicle was being used for an additional criminal purpose, related to the attempted use of such a form earlier that afternoon. This provided independent grounds for search of the vehicle. (See *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417].) The search of the vehicle was lawful, and the defendants' motion to suppress the checks and related materials was properly denied.

*Sufficiency of the evidence as to Carter.*

The forgery count is based upon a check, drawn upon North Trail Leather Works, Inc., payable to "Mar Bazar," which Brown attempted to pass at the food market. The testimony of the owner of the leather company established that the check was forged. Carter was present in the

market, but did not accompany Brown to the checkstand. After the store manager refused the check, Brown joined Carter near a fruit stand in the store, and they walked to Carter's car. After remaining there a few minutes they walked together to the drug store.

After Brown and Carter were arrested, the officers found on the seat of Carter's car a manila folder, inside which were three envelopes, each containing a group of completed checks. One envelope contained six checks, each payable to "Mar Bazar," including the one which Brown had attempted to pass at the market. The second contained six checks payable to "Jess Carbajai." The third contained seven checks payable to "Susan Craig," which was the name used by the woman who had attempted to pass the forged prescription. All of the checks were forgeries. On the floorboard the officers found a black wallet containing an identification card for "Jess Carbajai" bearing the photo of defendant Carter. Under the dashboard on the passenger's side of the car the officers found another black wallet containing an identification card for "Mar Bazar" bearing the photograph of defendant Brown. Elsewhere in the car were other papers purporting to identify Jess Carbajai, Mar Bazar and Susan Craig. The identification card containing the photo of Carter as "Jess Carbajai" described him as an employee of North Trail Leather Works, Inc.

■ Upon the evidence as a whole it was reasonable for the jury to infer that Brown and Carter were engaged jointly in the business of passing forged checks, and that Brown's attempt to pass one North Trail Leather Works check at the market was a part of their joint activity. Carter's possession of the type of material found in his car leaves no doubt about his fraudulent intent. (See *People* v. *Norwood* (1972) 26 Cal.App.3d 148, 159 [103 Cal.Rptr. 7].) The evidence is sufficient to support Carter's conviction for possessing the checks found in the car and for the attempt to pass a forged check in the food market.

*Multiple convictions of Penal Code section 475a.*

Count 4 of the information charged defendants with possession of a completed check payable to "Jess Carbajai" with the intent to defraud Christopher Sandidge and Transworld Bank. Counts 5 and 6 contained similar allegations except that the checks were payable to "Mar Bazar" and "Susan Craig" respectively.

In *People* v. *Bowie* (1977) 72 Cal.App.3d 143 [140 Cal.Rptr. 49] the defendant was charged and convicted on 11 counts of violation of Penal Code section 475 which provides: "Every person who . . . has or keeps in his possession . . . any blank or unfinished check," with intent to defraud any person, shall be punished. The appellate court held that possession of 11 such checks constituted a single offense, and reversed 10 of the 11 counts. The court drew analogies from other unlawful possession cases: *People* v. *Lyons* (1958) 50 Cal.2d 245, 275 [324 P.2d 556], holding that possession of several articles stolen from separate victims was a single offense; *People* v. *Puppilo* (1929) 100 Cal.App. 559, 562 [280 P. 545], stating that the unlawful possession of two pistols constituted only one offense.

The *Bowie* opinion distinguished a multiple forgery case (*People* v. *Neder* (1971) 16 Cal.App.3d 846, 852 [94 Cal.Rptr. 364]) upon the ground that the forgeries were multiple acts, as opposed to a single possession.

The Attorney General would distinguish *Bowie* upon the ground that the 11 blank checks in that case were identical, whereas the completed checks here were payable to different payees, and apparently were prepared for the commission of distinct frauds involving different victims. For the purpose of this analysis we accept the view that the merchant who cashes the forged check is likely to be the real victim of the fraud, rather than the drawee bank or the purported drawer whom the indictment named as the victim in all three counts.

Whether the checks are blanks, subject to Penal Code section 475, or completed checks subject to section 475a, or fictitious instruments subject to section 476, it is possible that each check will victimize a different person.[2] Section 475a cannot be distinguished upon that ground. Nor can we distinguish section 475 from section 475a because the former says "any" check and the latter says "a" check. The *Bowie* opinion reasoned that although the word "any" was singular, the singular includes the plural, citing Penal Code section 7.[3] The same may be said of the article "a" in section 475a.

---

[2] Penal Code section 476 makes criminal the possession of "any fictitious bill, note, or check" with intent to defraud.

[3] Penal Code section 7: "Words used in this code in the present tense include the future as well as the present; words used in the masculine gender include the feminine and neuter; the singular number includes the plural, and the plural the singular; . . . ."

■ The Legislature has prescribed the same range of punishment for each offense under sections 475, 475a and 476. This is true both under the law in effect in 1976 and the new sentencing law which became operative July 1, 1977. Considering that the three sections deal with closely related kinds of offenses, and to some extent overlap, we cannot believe that the Legislature intended that possession of several instruments in violation of section 475a constituted multiple offenses, while the possession of several under sections 475 or 476 constituted a single offense. We must conclude that the *Bowie* reasoning is applicable to the present case. Accordingly, two of the three possession counts must be reversed.

*Carter's consecutive sentence.*

On November 29, 1976, in case No. 30185 Judge Rogan sentenced Carter to state prison on count 3 (Pen. Code, § 470) and counts 4, 5 and 6 (Pen. Code § 475a), the terms to run concurrently.

On November 30, 1976, in case No. 29901, Judge DiGiuseppe revoked probation and purported to sentence defendant Carter to state prison for violation of section 11377, subdivision (a), Health and Safety Code, and declared that sentence "to run consecutively with any other now being served."

The record shows that Carter had been convicted of the Health and Safety Code violation in 1974 and had been sentenced to state prison at that time, with execution of the sentence suspended and probation granted. The action taken on November 30, 1976, was, in effect, to revoke probation and order execution of the 1974 sentence.

■ Under the rule established in *In re Nafe* (1965) 237 Cal.App.2d 809 [47 Cal.Rptr. 457] the court ordering an earlier sentence into execution has no power to order it to run consecutively to sentences imposed subsequently. The rationale is that under Penal Code section 669 only the judge rendering a "second or other subsequent judgment" may direct that the terms run consecutively, and in this situation the sentence originally pronounced in 1974 is not a "second or other subsequent judgment." The result is an anomolous distinction between persons who were given probation by proceedings suspended before sentence, and persons given probation after sentence with execution suspended. But as the Attorney General concedes, the *Nafe* rule is the

law which must be applied here. Therefore the sentence in case No. 29901 must run concurrently with the sentence in case No. 30185.

In case No. 30185, the judgment as to defendant Brown is affirmed; and as to defendant Carter, the judgment is affirmed except that the convictions under counts 4 and 5 are reversed.

In case No. 29901, the order of November 30, 1976, is modified to provide that the sentence shall run concurrently with the sentence in case No. 30185, and as so modified, it is affirmed.

Kingsley, J., and Jefferson (Bernard), J., concurred.