[No. B230574. Second Dist., Div. Four. Apr. 30, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MARCUS VALENZUELA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts A., C. and D.

## COUNSEL

Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WILLHITE, J.**—Defendant Joseph Marcus Valenzuela appeals from a judgment sentencing him to four years in state prison after a jury found him guilty

of one count of receiving stolen property (Pen. Code,[1] § 496, subd. (a)) and three misdemeanor counts of identity theft (§ 530.5, subd. (c)(1)). Defendant challenges the admission of subpoenaed bank records of one of the identity theft victims, arguing that the jury may have believed that defendant hacked into the victim's bank account. He also argues that his possession of the identifying information of three people at one time constitutes a single offense rather than three offenses and that, in any event, the sentence on one of those counts must be stayed under section 654 because it is based upon his possession of a driver's license, which is the subject of the receiving stolen property count. Finally, he asks this court to examine the material the trial court reviewed during its in camera hearing on defendant's *Pitchess* motion[2] to determine if all discoverable materials were ordered disclosed. We conclude the sentence in count 6 must be stayed, but otherwise affirm the judgment.

## BACKGROUND

On May 23, 2010, while looking at paint samples in a Home Depot in Hollywood, Elena Johnson placed a black leather case on the paint counter. Her cell phone, driver's license, debit card, and Costco card were in the case. She walked away from the counter, then realized she did not have her case with her. When she returned to the counter, the case was gone. She reported her missing case to customer service personnel. She cancelled her debit card the next day, but by that time there had been several charges on the card, totaling $450.

A few days later, Los Angeles Police Officer Rufo Amores and his partner were on patrol in Van Nuys when they saw defendant standing in a dark alley behind a motel. Defendant seemed nervous when he saw them. Officer Amores approached defendant and asked what he was doing. Defendant said he was visiting a friend. The officer asked defendant for identification, and defendant told him he only had an electronic benefits transfer (EBT) card with his name on it; he did not have any picture identification. Defendant reached in his pocket and pulled out two items—the EBT card and a California driver's license in the name of Elena Johnson—and handed them to Officer Amores.

Officer Amores asked defendant who the driver's license belonged to. Defendant responded that it belonged to his "homegirl," but the name he gave the officer was not the name on the license. When the officer pointed out that the name was incorrect, defendant told him that he had found the license.

---

[1] Further undesignated statutory references are to the Penal Code.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

Officer Amores then asked if he could search defendant, and defendant consented. One of the items the officer found during the search was a printout from a Web site that advertised the sale of people's personal identifying information. At the top of the page were the words "Hack Credit Card Numbers," below which were listed three names—Angel Burlison, Kenneth Enders, and Stephen Register—along with credit card information, dates of birth, Social Security numbers, telephone numbers, and addresses for each of them, as well as information regarding a Bank of America account for Register.

Officer Amores detained defendant and took him to the police station, where the officer contacted Johnson. Johnson told him that her driver's license had been stolen along with other property. He placed defendant under arrest for receiving stolen property. After being questioned, defendant signed a statement that an individual named "Chris" gave him the license at a Home Depot about a week earlier.

Los Angeles Police Detective Brian Ashley was assigned to investigate the case. He determined that the Social Security numbers and dates of birth listed for Burlison and Enders on the printout in defendant's possession were accurate. After reviewing bank records for Register's account that the district attorney subpoenaed from Bank of America, Detective Ashley determined that Stephen Register is a true human being, but that the Social Security number listed for him on the printout in defendant's possession was not accurate (one digit was incorrect).[3]

Defendant was charged by information with one felony count for receiving stolen property, i.e., Johnson's driver's license (count 5), and three misdemeanor counts for acquiring or retaining possession of personal identifying information of Angel Burlison (count 2), Stephen Register (count 4), and Elena Johnson (count 6). The information also alleged that defendant had seven prior felony convictions (§ 1203, subd. (e)(4)) and six prior prison terms (§ 667.5, subd. (b)).

In a bifurcated trial, the jury found defendant guilty on all four counts. Defendant waived trial on the special allegations. He admitted a single prior prison term allegation, and the court granted the prosecution's motion to strike the remaining allegations. The court sentenced defendant to the upper term of three years on the felony count, plus one year under section 667.5, subdivision (b), and imposed three concurrent sentences of one year (with credit for time served) on each of the three misdemeanor counts. Defendant timely filed a notice of appeal from the judgment.

---

[3] Comparing the information on the printout with the information on the subpoenaed bank records shows that the address on the printout has the wrong street number, but the telephone number is correct.

## DISCUSSION

A. *Admission of Bank Records**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Multiple Convictions for Misdemeanor Identity Theft*

When defendant was detained, he had in his possession a printout that had the names and certain identifying information of three people (Angel Burlison, Kenneth Enders, and Stephen Register), and Elena Johnson's California driver's license. He was charged with and convicted of three counts of identity theft (related to Burlison, Register, and Johnson) under section 530.5, subdivision (c)(1). That section provides: "Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55,[5] of another person is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment." (§ 530.5, subd. (c)(1).)

Defendant contends on appeal that his possession of personal identifying information, even if he possessed information related to several people, constitutes a single offense under section 530.5, subdivision (c)(1). He reasons that it is the act of possession that constitutes the offense, and that possession of multiple items at one time and place is a single act of possession. In making this argument, defendant relies upon cases that hold, for example, that possession at one time of more than one illegal substance (or possession of the same substance at different places), or multiple weapons, or multiple blank or completed checks, or multiple items with serial numbers removed, constitutes a single offense. (Citing *People v. Kirk* (1989) 211 Cal.App.3d 58, 62 [259 Cal.Rptr. 44] [possession of two sawed-off shotguns]; *People v. Theobald* (1964) 231 Cal.App.2d 351, 353 [41 Cal.Rptr. 758] [possession of marijuana in different places at one time]; *People v. Rouser* (1997) 59 Cal.App.4th 1065 [69 Cal.Rptr.2d 563] [possession of methamphetamine and heroin in prison]; *People v. Carter* (1977) 75 Cal.App.3d 865 [142 Cal.Rptr. 517] [possession of multiple completed checks with intent to defraud] *(Carter)*; *People v. Bowie* (1977) 72 Cal.App.3d 143, 156 [140 Cal.Rptr. 49] [possession of multiple blank checks with intent to defraud] *(Bowie)*; *People v. Harris* (1977) 71 Cal.App.3d 959, 968 [139

---

*See footnote, *ante*, page 800.

[5] Section 530.55 includes within the definition of "personal identifying information" "any name, address, telephone number, . . . state or federal driver's license, or identification number, social security number, . . . [and] date of birth." (§ 530.55, subd. (b).)

Cal.Rptr. 778] [possession of multiple items with serial numbers removed]; *People v. Puppilo* (1929) 100 Cal.App. 559, 562 [280 P. 545] [possession of two weapons].)

Defendant also points to another subdivision of section 530.5 to support his contention that possession of identifying information of multiple persons constitutes a single offense. He observes that subdivision (c)(3) of section 530.5 makes the possession of identifying information of 10 or more persons a single offense, punishable as a misdemeanor or a felony, and argues it "stands to reason" that the possession of identifying information of fewer than 10 persons also must be a single offense.

At first glance, defendant's argument, and particularly his reliance on two cases involving possession of checks with intent to defraud—*Bowie, supra,* 72 Cal.App.3d 143 and *Carter, supra,* 75 Cal.App.3d 865 (a case from this division)—seems to have merit.

In *Bowie, supra,* 72 Cal.App.3d 143, the defendant sold 11 checks from a defunct corporation with the intent that the purchaser would pass them to defraud other persons, and was convicted of 11 counts of possession of blank checks with intent to defraud in violation of former section 475.[6] Division Five of this appellate district held that the defendant's possession of 11 blank checks was a single act constituting a single violation of the statute. (*Bowie,* at p. 156.) The court found "determinative" the case of *People v. Puppilo, supra,* 100 Cal.App. 559, which held the possession of two firearms on one occasion constituted only one crime under a statute that made it illegal to possess "any" firearm capable of being concealed. (*Bowie, supra,* 72 Cal.App.3d at p. 156.) The court distinguished the case relied upon by the People, *People v. Neder* (1971) 16 Cal.App.3d 846 [94 Cal.Rptr. 364], because that case involved a prosecution for forgery under former section 470 based upon the defendant using a single victim's credit card to make three purchases. The *Bowie* court explained that in *Neder,* each use of the credit card constituted a forgery, and thus there were three separate offenses, whereas in the case before it the prosecution was based on a single act of possession, rather than multiple acts of forgery. The *Bowie* court also rejected the People's argument that there were multiple offenses because there were 11 potential victims (i.e., each person to whom the checks might be passed). In rejecting that argument the court relied upon *People v. Lyons* (1958) 50 Cal.2d 245 [324 P.2d 556],

---

[6] Former section 475 provided in relevant part: " 'Every person who . . . has or keeps in his possession . . . any blank or unfinished check, . . . with intention to fill up and complete such blank and unfinished . . . check, . . . or procure the same to be filled up and completed in order to utter or pass the same, or to permit, or cause, or procure the same to be uttered or passed, to defraud any person, is punishable by imprisonment in the state prison . . . or by imprisonment in the county jail for not more than one year.' " (*Bowie, supra,* 72 Cal.App.3d at p. 156.)

overruled on other grounds as stated in *People v. Carrera* (1989) 49 Cal.3d 291, 321 [261 Cal.Rptr. 348, 777 P.2d 121], which held that the receipt on one occasion of two items of property that had been stolen from separate victims constituted only one crime of receiving stolen property. (*Bowie, supra,* 72 Cal.App.3d at p. 157.)

We employed similar reasoning in *Carter, supra,* 75 Cal.App.3d 865. In that case, the defendant was found with 19 completed checks, drawn from the same issuer, in three separate envelopes, each envelope containing checks made out to a different person. (*Id.* at p. 870.) The defendant was convicted of three counts of possession of a completed check with intent to defraud, a violation of former section 475a.[7] (*Carter,* at p. 868.) In arguing to uphold all three convictions, the Attorney General attempted to distinguish *Bowie, supra,* 72 Cal.App.3d 143 on the ground that the blank checks in *Bowie* were identical, while the checks in *Carter* were payable to three different payees and thus were prepared for the commission of distinct frauds involving three different victims. (*Carter, supra,* 75 Cal.App.3d at p. 871.) We concluded that *Bowie* could not be distinguished on that ground because the *Bowie* court acknowledged there could be a different victim for each blank check, and it does not matter whether the checks in a defendant's possession are blank checks or completed checks, because it is possible that each check will victimize a different person. (*Ibid.*) Finding that possession of multiple checks (whether blank or completed) with intent to defraud was a single offense even when there are multiple potential victims, we reversed two of the three possession counts. (*Id.* at p. 872.)

There is an important distinction, however, between *Bowie, Carter,* or the other possession cases defendant relies upon and the present case. Section 530.5 is not a possession statute, it is an *identity theft* statute.

As originally enacted in 1997, section 530.5 made it a misdemeanor to obtain personal identifying information of another person *and use* that information to obtain or attempt to obtain credit, goods or services in the name of the other person without their consent. (Stats. 1997, ch. 768, § 6, p. 5205, eff. Jan. 1, 1998.) The statute was later amended to make the offense punishable as a felony or a misdemeanor and to provide some relief to the victim of identity theft. (Stats. 1998, ch. 488, § 1, p. 3531; Stats. 2000, ch. 956, § 1, p. 7043.) In 2002, the Legislature amended section 530.5 again, to make it a misdemeanor offense to acquire, transfer, or retain possession of another's personal identifying information with the intent to defraud. (Stats. 2002, ch. 254, § 1, p. 1072.) As the author of the bill to amend the statute

---

[7] Former section 475a provided in relevant part: " 'Every person who has in his possession a completed check . . . with intention to utter or pass the same . . . to defraud any person, is punishable by imprisonment . . . .' " (*Carter, supra,* 75 Cal.App.3d at p. 868, fn. 1.)

explained, the problem of identity theft had grown since the original enactment, as identity thieves began to compile lists of victims' names and other identifying information that could be used to open fraudulent accounts or take over existing accounts. Under then existing law, law enforcement could not charge those thieves with identity theft until they used the information, even if they admitted their intent to sell the information to others or use it themselves. The author explained the amendment was needed to protect the victims of identity fraud, who cannot protect themselves from fraudulent use of their identifying information once it is in the possession of another, because they cannot easily change their name, date of birth, Social Security number, or address. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1254 (2001–2002 Reg. Sess.) as amended Mar. 11, 2002.)

The statute was subsequently amended to make punishable as a felony or a misdemeanor (1) acquiring or retaining possession of personal identifying information of another with intent to defraud if the defendant has previously been convicted of identity theft; (2) selling, transferring, or conveying personal identifying information of another with intent to defraud; or (3) acquiring or retaining possession of personal identifying information of 10 or more persons with intent to defraud. (Stats. 2006, ch. 522, § 2.) The legislative history of the bill amending the statute (Assem. Bill No. 2886 (2005–2006 Reg. Sess.)) sheds additional light on the Legislature's intent that the possession of personal identifying information was a form of theft rather than simple possession.

The author of Assembly Bill No. 2886 (2005–2006 Reg. Sess.) explained that under the then current law, identity thieves usually receive just "a slap on the wrist for all the damage they cause in the lives of these victims," and that the purpose of the bill was to "give local law enforcement and the courts the legal authority and tools necessary to aid victims." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2886 (2005–2006 Reg. Sess.) as amended Aug. 28, 2006, p. 5.)

As introduced, Assembly Bill No. 2886 (2005–2006 Reg. Sess.) proposed to make the sale, transfer, or conveyance of the personal identifying information of another punishable as grand theft. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2886 (2005–2006 Reg. Sess.) Apr. 18, 2006.) The Senate Committee on Public Safety expressed some concern about this provision, noting that the proposed provision would define the sale, transfer, or conveyance of the information as grand theft even though the defendant may not have actually taken the information. The committee explained that the crime of taking of personal identifying information occurs "in the other crime considered or amended by this bill—acquiring or retaining personal identifying information, [while] [t]he crime of selling, conveying or transferring identifying information is more akin to a form of receiving stolen

property. [Citation.] [¶] This might appear to be an esoteric point. However, the crimes of identity theft, and complementary statutory provisions, were created because the harm suffered by identity theft victims went well beyond the actual property obtained through the misuse of the person's identity. Identity theft victims' lives are often severely disrupted. For example, where a thief used the victim's identity to buy a coat on credit, the victim may not be liable for the actual cost of the coat. However, if the victim was initially unaware of the illicit transaction, the damage to the person's credit may be very difficult to repair. The perpetrator could commit other crimes by using the victim's identity, causing great harm to the victim. Thus, identity theft in the electronic age is an essentially unique crime, not simply a form of grand theft. [¶] In contrast, grand theft is relatively well defined. . . . Grand theft is typically a discrete event, not a crime that creates ripples of harm to the victim that flow from the initial misappropriation." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2886 (2005–2006 Reg. Sess.) as amended May 26, 2006, pp. O–P.) The proposed provision was amended to make the sale, transfer, or conveyance of personal identifying information with the intent to defraud punishable as a misdemeanor or a felony. (Stats. 2006, ch. 522, § 2.)

As this legislative history makes clear, the retention of personal identifying information of another is not a possession crime, but is a unique theft crime. Therefore, cases holding that, with regard to possession crimes, the possession of multiple items is a single offense even when there are multiple victims are not applicable to section 530.5, subdivision (c)(1). Instead, the retention of personal identifying information of multiple victims constitutes multiple identity theft offenses.

■ The fact that subdivision (c)(3) of section 530.5 makes the identify theft of 10 or more persons punishable as a misdemeanor or a felony does not, as defendant asserts, evidence the Legislature's intent to make the possession of identifying information of fewer than 10 people a single offense. Rather, the addition of subdivision (c)(3)—along with the addition of subdivision (c)(2), which makes a violation of subdivision (c)(1) punishable as a misdemeanor or a felony if the defendant has a prior identity theft conviction—simply evidences the Legislature's intent to provide law enforcement and the courts with an additional tool to help stem the tide of identity theft by providing a means to sentence repeat offenders to state prison rather than county jail.

In short, we conclude that defendant was properly charged with and convicted of three counts of identity theft under section 530.5, subdivision (c)(1) based upon his possession of personal identifying information relating to three victims.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified to reflect that the sentence on count 6 is stayed under section 654. In all other respects, the judgment is affirmed.

Epstein, P. J., and Suzukawa, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 25, 2012, S203054.

---

*See footnote, *ante*, page 800.