Filed 6/30/15  P. v. Cassidy CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065931 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD252989) |
| ROBERT LEE CASSIDY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge. Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Robert Lee Cassidy guilty of receiving stolen property, possessing burglary tools and possessing the personal identifying information of ten or more people

with the intent to defraud within the meaning of Penal Code section 530.5, subdivision (c)(3). (Undesignated statutory references are to the Penal Code.) Cassidy appeals his identity theft conviction, contending the evidence did not support a finding he possessed the information with the intent to defraud. He also asserts the trial court erred by (1) responding to a jury question, (2) by not instructing the jury on the lesser offense of misdemeanor possession of identifying information under section 530.5, subdivision (c)(1), and (3) instructing the jury on the theory of aiding and abetting. We reject his contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On an afternoon in December 2013, San Diego Police Department Officer Michael Weaver investigated a report of an unconscious man inside a Mercedes. Officer Weaver observed a Mercedes parked with the door open. Cassidy sat in the driver's seat, unconscious with one foot extended outside onto the ground. When Cassidy woke up, he told Officer Weaver that he was unemployed and living in his car.

Officer Weaver conducted a search of the car. In the center console of the car, he discovered a handicap placard and determined that Cassidy did not own the placard. Further investigation revealed the handicap placard had been stolen from a locked car along with the vehicle registration and other documents. Inside the trunk were, among other things, some briefcases and a "professional slim jim kit," which is used to enter cars without use of a key. Officer Weaver also found a two-gallon jug that smelled of gasoline, materials to siphon gasoline from cars and items to remove the rubber casings on automobile windows. Officer Weaver believed these items could be used to enter

2

locked vehicles.  Finally, Officer Weaver discovered a license plate registered to a Mercedes other than Cassidy's.

Officer Weaver conducted an initial search of the three briefcases found in the car. The briefcases contained paperwork and numerous checks written out to Cassidy for large amounts of money.  The checks prompted Officer Weaver to call Detective David Spitzer of the identity theft unit to the scene.  Detective Spitzer arrived and later inventoried the contents of the three briefcases found in Cassidy's trunk.

A brown briefcase contained notes explaining how to decipher the origination of any social security number, three types of "check stock" used to create checks and state-issued documents for two businesses in Cassidy's name.  Detective Spitzer also found checks from an Oregon company called Enchanted Gardens Landscape Service, a New Jersey company called Sea Box Incorporated and a company called Parts Express (the three businesses).  All of the checks were made out to a person named Scott McEachern.

Investigation revealed the checks were counterfeit.  While the account numbers listed for the three businesses were valid, none of the three businesses had ever written a check to Scott McEachern.  Nor had the businesses given Cassidy permission to be in possession of their checks or account information.  Detective Spitzer explained that thieves commonly make checks payable to others to avoid detection.  A fraud investigator for Wells Fargo Bank testified that the bank had paid a fraud claim on the account of one of the three businesses.

Inside a black briefcase, Detective Spitzer found, among other things, a Visa card and insurance cards in the name of Manny Manatad.  Inside an address book that Cassidy

3

admitted he owned, was Manatad's credit card. Manatad testified at trial that the cards found in the briefcase were his. Manatad did not know Cassidy and had never given him permission to be in possession of his personal information.

Inside a silver briefcase, Detective Spitzer found loose documents and many different manila folders. One folder contained pages of false names, addresses, social security numbers, driver's license numbers, dates of birth and credit card numbers created using a "fixer identity generator." Such lists are used to create identities to defraud others. Other folders contained personal identifying information for 12 different individuals. Detective Spitzer later testified as an expert at trial. Cassidy testified in his defense. Cassidy stated he never intended to commit fraud.

## DISCUSSION

### I. *Sufficiency of the Evidence*

Cassidy challenges his conviction on count one for acquiring or retaining possession of the identifying information of ten or more people with the intent to defraud. (§ 530.5, subd. (c)(3), hereinafter section 530.5(c)(3).) Cassidy concedes the evidence established he possessed the requisite identifying pieces of information as to ten separate individuals, but argues the evidence did not show he possessed or retained that information with the intent to commit identity theft. We disagree.

In reviewing a challenge to the sufficiency of evidence, we "consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt

4

beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432, fn. omitted.) "The standard of review is the same in cases in which the People rely mainly on circumstantial evidence." (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Because intent can seldom be proven by direct evidence, it typically is inferred from the circumstances. (*People v. Abilez* (2007) 41 Cal.4th 472, 506-507 [robbery]; *People v. Holt* (1997) 15 Cal.4th 619, 668 [burglary]; *People v. Wilkins* (1972) 27 Cal.App.3d 763, 773 [intent to defraud].)

Here, the prosecution presented sufficient evidence from which a reasonable jury could infer that Cassidy acquired or retained possession of the information with the necessary intent to defraud. After being evicted from his home, Cassidy moved his belongings to two storage locations. When he purchased the Mercedes, he moved some of his belongings into the car. Cassidy explained that the silver briefcase belonged to his estranged wife, Chantal Kiley, whom he had not seen in over a year. Cassidy admitted that he reviewed the contents of the silver briefcase and knew it contained various papers in other people's names. The silver briefcase also contained documents pertaining to Cassidy and his Mercedes. Cassidy had seen Kiley with the personal identifying information of other people in the past and admitted that Kiley had previously committed fraud.

Detective Spitzer reviewed the contents of the silver briefcase, noting it contained personal identifying information for 12 individuals or businesses. Detective Spitzer explained how personal identifying information can be used to create false documents such as checks and credit cards. Although much of the information found was a few years old and the age of the information can impact its usability for identity theft purposes, Detective Spitzer stated it is "very common" for identity thieves to save information. Stolen information which is five to ten years old can be used to defraud individuals because some information about individuals never changes. Additionally, it is common for identity thieves to buy and sell information. Detective Spitzer opined that Cassidy was "stockpiling information" for later use when he had the necessary equipment. That there was no evidence showing Cassidy had attempted to use any of the identifying information for unlawful purposes is irrelevant as this is not an element of the crime.

## II. *Response to Jury Question*

A. Background Facts

The trial court instructed the jury on count one with the pattern jury instruction describing the elements of section 530.5(c)(3). (CALCRIM No. 2041.) The instruction required the People to prove: (1) the defendant acquired or kept the personal identifying information of ten or more other persons; and (2) did so with the intent to defraud another person. The instruction defined intent as follows: "A person intends to *defraud* if he or she intends to deceive another person in order to cause a loss of money, or goods,

6

or services, or something else of value, or to cause damage to a legal, financial, or property right."

During deliberations, the jury inquired whether the "intent need[ed] to exist for 10 or more or just 1?" The court informed the parties that it intended to respond by rewording CALCRIM No. 2041. After discussing the matter, defense counsel requested the jury be instructed that the intent must exist for ten or more and must be an intent to defraud one or more persons. The court commented that the proposed response added an element to the crime. Ultimately, the court provided the jury a response which mimicked the statutory language: "Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information of 10 or more other persons is guilty. . . ." Later that day, the jury returned a guilty verdict on count one.

B. Analysis

Trial courts have a duty to help a jury understand the legal principles it is asked to apply (*People v. Beardslee* (1991) 53 Cal.3d 68, 97) and to attempt to clear up any instructional confusion expressed by the jury. (§ 1138; *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212.) A court's decision as to what additional explanations are required to satisfy the jury's request for information is a discretionary one that will only be reversed for manifest abuse (*People v. Gonzalez*, at p. 1213) and a violation of section 1138 warrants reversal only if prejudice appears (*People v. Beardslee*, at p. 97).

Cassidy contends the trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence and the instruction provided by the court in response to the jury's question incorrectly stated the law. Relying on *People v.*

7

*Valenzuela* (2012) 205 Cal.App.4th 800 (*Valenzuela*), Cassidy contends the intent to defraud had to accompany the possession of ten or more items and must apply to each and every one of them.

The parties' dispute over the propriety of the trial court's response to the jury question ultimately involves an issue of statutory interpretation, which is a question of law subject to de novo review on appeal. (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 76-77.) In interpreting a statute, our goal is to ascertain and carry out the Legislature's intent. (Code Civ. Proc., § 1859.) As we shall explain, we disagree with Cassidy's interpretation of the statute.

Section 530.5, subdivision (c)(1) (hereinafter section 530.5(c)(1)) makes it a misdemeanor to acquire or retain possession of the personal identifying information "of another person" with the intent to defraud. Section 530.5(c)(3) criminalizes the acquisition or retention of the personal identifying information "of 10 or more other persons" with the intent to defraud. Subdivision 530.5(c)(3) provides the offense may be punishable as either a felony or a misdemeanor.

In *Valenzuela*, the defendant was convicted of three misdemeanor counts of identity theft under section 530.5(c)(1). (*Valenzuela*, *supra*, 205 Cal.App.4th at p. 801.) He challenged the convictions arguing his possession of the identifying information of three people at one time constitutes a single offense rather than three separate offenses. (*Ibid.*) Defendant asserted the fact section 530.5(c)(3) made the theft of identifying information for ten or more persons punishable as a misdemeanor or a felony constituted evidence of the Legislature's intent to make the possession of identifying information of

fewer than ten people a single offense under section 530.5(c)(1). (*Valenzuela*, at p. 808.) The *Valenzuela* court rejected this argument, stating section 530.5(c)(3) evidenced the Legislature's intent to provide law enforcement and the courts with another tool "to help stem the tide of identity theft" by allowing a state prison sentence rather than county jail. (*Valenzuela*, at p. 808.)  After examining the legislative history for section 530.5, the *Valenzuela* court noted that the acquisition or retention of personal identifying information of another is not a possession crime, but is a unique theft crime; thus, the acquisition or retention of personal identifying information of multiple victims constitutes multiple identity theft offenses under section 530.5(c)(1). (*Valenzuela*, at p. 808.)

Cassidy argues the *Valenzuela* decision supports his argument that a violation of section 530.5(c)(3) required a finding that the intent to defraud had to exist as to each of the ten or more persons to whom he possessed the personal identifying information.  This argument is directly contrary to the legislative history of section 530.5 as set forth in *Valenzuela*.  The legislative history makes clear the Legislature's purpose of broadening the crime of identity theft, a crime that can take place in many forms and "creates ripples of harm to the victim that flow from the initial misappropriation." (*Valenzuela*, *supra*, 205 Cal.App.4th at p. 808.)

The intent of the identify thief is to use the stolen personal information of different individuals with the overall intent to deceive as many persons as possible to get money or goods.  The act being punished is the acquisition or retention of the personal information. An identity thief, such as Cassidy, that has acquired or retained the personal information

9

of ten or more people is better prepared to defraud, and more deeply involved in, a general scheme to defraud. Such a person is more dangerous and thus deserving of more punishment than the person found with the identifying information of one other person. Accordingly, the trial court correctly refused to directly answer the jury's question with any numerical value to quantify the specific intent requirement. Based on our conclusion that Cassidy's proposed response to the jury's question incorrectly stated the law, we conclude the trial court did not abuse its discretion under section 1138 when in answered the jury's question by restating the elements of the crime.

### III. *Lesser Included Offense*

When the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of a lesser offense, the trial court has a sua sponte duty to instruct on the lesser included offense. (*People v. Cooper* (1991) 53 Cal.3d 771, 827.) Substantial evidence is not equivalent to any evidence, no matter how weak, but requires evidence from which a reasonable jury could conclude the lesser included offense, but not the greater offense, was committed. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) The failure to instruct sua sponte on a lesser included offense in a noncapital case is not subject to reversal unless an examination of the entire record establishes a reasonable probability the error affected the outcome. (*Id.* at p. 165.)

Cassidy asserts the trial court prejudicially erred in failing to sua sponte instruct the jury on the lesser included offense of acquiring or retaining possession of the personal identifying information of another person with the intent to defraud, a

10

misdemeanor within the meaning of section 530.5(c)(1). The Attorney General concedes, and we agree, based on the elements test, section 530.5(c)(1) is a lesser included offense of section 530.5(c)(3). Substantial evidence, however, did not support a conclusion that Cassidy committed the lesser included offense, but not the greater offense.

During closing argument, defense counsel virtually conceded the prosecution had proven Cassidy possessed the personal indentifying information of ten or more people and focused his argument on the intent element of section 530.5(c)(3). On appeal, Cassidy conceded the evidence established he possessed the requisite identifying pieces of information as to ten separate individuals as required under section 530.5(c)(3). Thus, if the jury found the prosecution proved the second element, that Cassidy acquired or retained the personal indentifying information with the intent to defraud, it could only find Cassidy guilty of the greater offense and not the lesser. As discussed above, Cassidy misinterpreted the intent required for guilt under section 530.5(c)(3) and the evidence amply supported that Cassidy possessed the requisite intent. (*Ante*, Parts I & II.) Accordingly, substantial evidence did not support instructing on section 530.5(c)(1).

## IV. *Aiding and Abetting Instruction*

The prosecution requested the jury be instructed on aiding and abetting, noting that if the jury believed Cassidy's testimony that Kiley was involved in identity theft, it could conclude that Cassidy aided and abetted her crime by saving personal identifying information for her. Over defense objection, the trial court instructed the jury that Cassidy could be guilty of his crimes directly or on aiding and abetting principles.

11

Cassidy asserts the trial court erred in instructing on aiding and abetting because there was no evidence establishing Kiley committed any crime of identity theft under section 530.5(c)(3), let alone any evidence her crime involved the identifying information of ten or more people. We disagree.

A person aids and abets the commission of a crime when the person, acting (1) with knowledge of the perpetrator's unlawful purpose, and (2) with intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates the commission of the crime. (*People v. Croy* (1985) 41 Cal.3d 1, 11-12; *People v. Beeman* (1984) 35 Cal.3d 547, 561; see also CALCRIM No. 401.) Direct evidence of the defendant's mental state is rarely available and may be shown with circumstantial evidence. (*People v. Beeman*, at pp. 558-559.) "[A]iding and abetting liability cannot attach unless the substantive elements of a predicate offense are met. This requirement may be satisfied by proof of an attempt [to commit the offense]." (*People v. Perez* (2005) 35 Cal.4th 1219, 1227.)

Here, the substantive elements of the predicate offense were satisfied. Cassidy testified that the personal identifying information in the silver briefcase belonged to Kiley, he had seen Kiley with the personal identifying information of other people in the past and admitted Kiley had previously committed fraud. Based on Cassidy's testimony that he retained other information for eventual return, the jury could have reasonably inferred Cassidy similarly retained the personal identifying information in the silver briefcase for eventual return to Kiley for the purpose of furthering her commission of identity theft crimes. Actual use of the personal information is not an element of the

12

crime. Accordingly, the jury could have reasonably concluded that the information belonged to Kiley, and Cassidy retained the information to aid and abet Kiley.

Even assuming the trial court erred when it instructed the jury on aiding and abetting, the assumed error was harmless. If a jury is presented with multiple theories supporting conviction on a single charge and on review, one theory is found unsupported by sufficient evidence, reversal is not required if sufficient evidence supports the alternate theory and there is no affirmative basis for concluding the jury relied on the factually unsupported theory because it is presumed jurors would not rely on a factually deficient theory. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1128-1129.)

Here, the court instructed the jury with CALCRIM No. 200, which states, "You must decide what the facts are. It is up to all of you, and you alone, to decide what happened, based only on the evidence that has been presented to you in this trial." This instruction further informed the jury that "[s]ome of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." Thus, the jury was aware it could find that there was no evidence to support the aiding and abetting instruction, and that in such a situation, this instruction would not apply. During closing argument, the prosecutor did not argue Cassidy's potential guilt on count one on an aiding and abetting theory. There is nothing in the record to affirmatively show that

13

the jury in fact relied on the aiding and abetting instruction to reach its verdict on count one.  Moreover, the evidence amply supported Cassidy's guilt on count one.  (*Ante*, Part I.)  Thus, assuming the aiding and abetting instruction was unsupported by the evidence, any error was harmless.

## DISPOSITION

The judgment is affirmed.

McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.